## Sanders *v.* Sharp, Appellant.

*Oil lease—Forfeiture.*

A lease for twenty years for the sole purpose of mining for oil, etc., contained provisions that, in consideration of the lease, the lessee agreed " to commence operations within one year from the execution thereof, or thereafter pay to the lessor four hundred dollars per annum until work is commenced," and that " a failure to pay within sixty days after maturity works an immediate forfeiture." *Held,* that the clause of forfeiture was for the protection of the lessor who could dispense with its provisions and affirm the continuance of the contract: Wills v. Manufacturers' Natural Gas Co., 130 Pa. 222.

*Parol variation of lease—Agency of lessee.*

A lessee, in the face of the terms of a written lease and an assignment thereof, cannot relieve himself of personal liability by showing by parol evidence that he was acting as the agent of a proposed corporation or the persons who were about to organize such company, at least without showing that the execution of the lease was induced by fraud, misrepresentation, etc.

*Affidavit of defence.*

An affidavit of defence to an action on a lease, setting up a contemporaneous parol agreement, should be clear and precise, to prevent judgment.

Argued Oct. 17, 1892. Appeal, No. 321, Oct. T., 1892, by defendant, M. Sharp, from judgment of C. P. Washington Co., Nov. T., 1891, No. 26, for plaintiff, Stephen Sanders, for want of a sufficient affidavit of defence. Before STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Assumpsit for rent on oil lease. Rule for judgment for want of sufficient affidavit of defence.

The affidavit of defence was in part as follows:

" 3. A short time prior to the date of said lease this deponent, A. M. Brown, Isaac Sharp, Isaac Lehman, James P. Sayers, A. B. Caldwell and John Waterhouse agreed to become associated with each other and with other persons that might become associated with them and to form an oil and gas company for the purpose of drilling an experimental well to test

the territory for the production of oil and gas lying in the neighborhood of Amity in said county, including the farm of the said Stephen Sanders there situate, and as preliminary to forming the company an effort was made to secure leases of a number of farms or tracts of land near where the test well was to be drilled, and Stephen Sanders and other farmers in the neighborhood were consulted and found willing to make leases of land to promote the development of the territory for a rent or royalty of one eighth of the oil and $500 for each gas well if found sufficient to justify in utilizing off the premises, and the leases were drawn in the name of this deponent to be by him assigned to the company as soon as it should be legally incorporated, and the said Stephen Sanders understood that the lease from him was taken for the proposed corporation, that this deponent had no interest therein other than as one of the promoters of such company and enterprise, and that it was for the use of and to be assigned to the corporation.

" The aforesaid A. M. Brown, Isaac Sharp, and other promoters of said corporation proceeded with the plan of forming an oil and gas company, and a corporation with a capital stock of ten thousand dollars was duly formed and incorporated under the laws of Pennsylvania of the name and style of the ' Ten Mile Oil and Gas Company of Washington, Pa.,' and after its incorporation and in pursuance of the understanding and agreement with the said Stephen Sanders, this deponent did, on the 30th day of June, 1886, for a nominal consideration make an assignment indorsed on said lease to the Ten Mile Oil and Gas Company of Washington.

" And deponent saith that his consent to accept the lease of the said Stephen Sanders till after the said company should be formed and transfer the same to it, was voluntarily obtained without consideration and with the end in view as well on part of plaintiff as of this deponent of promoting the raising of capital by stock subscriptions forming the said company and developing the territory as aforesaid for mutual advantage; and from information of the acts and declarations of the said Stephen Sanders which information deponent believes to be true, this deponent saith that said Stephen Sanders would not have made any lease of his land to deponent if he had not known and fully understood that the same was for the use and benefit

of a company to be so as aforesaid formed and that the same was to be absolutely assigned to such company, that deponent acquired and transferred only the legal estate therein for the purposes aforesaid, the equitable title thereto being in the promoters and members of said corporation, and deponent saith that the legal theory, contention and demand now made by the plaintiff which seeks to hold this deponent absolutely bound to perform the alleged covenants in the said agreement are against equity and good conscience.

" 5. In making the said oil and gas lease intended as aforesaid for the use of such corporation it was agreed that if the lessee or his assigns should commence work of drilling for oil in the neighborhood of said farm of Stephen Sanders, to wit: On the farm of Cyrus Meloy or John Johnson within sixty days from the date of the lease and cause no cessation of work for more than sixty days at a time the said lessee should have the period of one year to commence on the farm of Stephen Sanders and should have the right to further delay by paying therefor the sum of four hundred dollars per year in advance; a printed form of lease was procured and used without advice of counsel, and by inadvertence it was not expressed in the lease that the payment for delay was due in advance for the year, a mistake which was not discovered or understood by this deponent or the said Stephen Sanders for more than a year after the making and execution of the lease as hereinafter more fully shown, but it was distinctly understood that the money was to be paid at the election of the party of the second part at the beginning of the year and sixty days delay in payment was to work an immediate forfeiture of all rights under the lease.

" 6. The said the Ten Mile Oil and Gas Company of Washington, Pa., commenced a well on the farm of Cyrus Meloy within sixty days from the date of said lease and prosecuted the work to completion and made a test of the territory for the production of oil and gas. No oil was found and although gas was found in considerable quantities, the situation was not such as to justify the company in attempting to use it at any point not on the premises. At the expiration of the year from the date of said lease the said Ten Mile Oil and Gas Company elected to pay the said sum of four hundred dollars and con-

tinue the lease in force for another year, and afterwards paid to said Stephen Sanders the said sum, which he accepted and signed in writing indorsed on said lease an acknowledgment, of which the following is a true copy:

" ' I Stephen Sanders hereby acknowledge to have received of the Ten Mile Oil and Gas Company the sum of four hundred dollars as required by the terms of the within lease.' [With signature, witnesses, etc.]

" And the said Stephen Sanders expressed himself as well pleased and said it was more than he ever expected to get out of it; but the said Stephen Sanders and others to the number of ten or more who had given similar leases of land for the same purpose understood and claimed that the money was payable in advance and such was the understanding of this deponent. The reason it was not paid within the sixty days was that there were some whose leases were of more recent date and a time was agreed upon to meet them at Amity and pay all at once; but it is was not claimed by anyone that the money was not due, or that the company did not have the right of electing to pay the money or let the lease be forfeited.

" 7. That afterwards one R. H. Brown procured from said Ten Mile Oil and Gas Company an assignment of all its right, title and interest in the said oil and gas lease. Neither the said corporation nor the said R. H. Brown paid the said sum of four hundred dollars at the end of the second year or for sixty days thereafter, and the said lease became and was forfeited to the said Stephen Sanders. Nevertheless the said R. H. Brown and others associated with him desired to make a further test of said territory for the production of oil and gas, and the said Stephen Sanders encouraged such further experiment; and the said R. H. Brown and others leased some other lands in close proximity to the farm of said Sanders and formed a joint stock company called the Prosperity Oil and Gas Company for such purpose, and said Stephen Sanders waived to them the forfeiture of said leasehold and accepted from them the sum of four hundred dollars and thereby gave to them the privilege of holding his land for another year. A large sum of money was raised by the said Prosperity Oil and Gas Company, and a large expenditure made in drilling another well close to the farm of said Sanders, and the result of the experi-

ment was entire failure, the well producing neither oil nor gas, and no further effort has been made and deponent verily believes that any effort to produce oil or gas on the farm of said Stephen Sanders above mentioned would be a useless expenditure of money.

" 8. And this deponent further shows, as he is informed and believes, that the said R. H. Brown and the said Prosperity Oil and Gas Company make no claim to any leasehold or mining right in the said farm of the plaintiff, and are ready and willing to formally surrender and release to plaintiff all right, title, and interest thereto, but refuse to pay any money to continue the same in force; yet the said plaintiff refuses to accept a surrender thereof or treat the same as forfeited, and brings this suit and claims that he has in and by the premises acquired the legal right to compel this deponent to pay to him the sum of four hundred dollars per annum for the residue of the term of twenty years mentioned in said lease.

" 9. And this deponent charges that the interpretation, contention and demand of the plaintiff in this regard are illegal and unjust in view of the facts and premises, to wit: That it was agreed and understood that this deponent was not to hold the said lease for his own benefit and as his own property; that the purpose in making it on part of said Stephen Sanders was to have a test of the territory made, and if oil and gas should be found derived his advantage and consideration from his rent and royalty from the oil and gas produced on his said farm; that it was not proposed or at any time agreed that this deponent was to drill a well on the farm of said Sanders and to pay to said Sanders the sum of four hundred dollars until such well should be commenced, and deponent in fact saith that if any such agreement had been understood to be contained in said oil and gas lease he would not have signed it; that the said sum of four hundred dollars which was to become due and payable at the beginning of each year for which the said proposed company might elect to continue the lease was not rent either for the land or the mining right but was an agreed sum which the owners of the mining right could pay to gain time for their operations or not pay by incurring an immediate forfeiture; and deponent saith that he is advised and believes that he cannot be held liable to pay as in case of rent the said

sum after the assignment of the lease in good faith in accordance with his agreement and understanding with the said Sanders at the time the lease was executed as hereinbefore stated, and that the same cannot be recovered for the residue of the term as liquidated damages ; that the said defendant fully performed his agreement and undertaking with the said Stephen Sanders as the same was understood between them ; that the said plaintiff has had the benefit and advantage of having two tests made to develop his said land for oil and gas and has had and received the sum of eight hundred dollars derived from the said venture and undertaking, and has contributed nothing thereto except the option of holding the oil and gas right in his land for the period of three years; that it has been shown with reasonable certainty that oil and gas cannot be found in his land in paying quantities ; and that this deponent has acted in good faith and derived no benefit or advantage from said agreement.

" And finally deponent saith that if any such agreement and obligation as that contended for by the plaintiff is found and contained in the said oil and gas lease it is the result of mistake, accident and misadventure, and the demand of the plaintiff is contrary to good conscience and tends to the manifest injury of this deponent in the premises and further saith not."

Opinion of court below was as follows, by McILVAINE, P. J. :

" This action was brought upon the covenants contained in a certain lease, dated February 1, 1886, by Stephen Sanders to M. Sharp, of a certain tract of land in this county containing four hundred acres, for the sole and only purpose of mining and excavating for petroleum, coal, rock or carbon oil or other valuable mineral or volatile substances and for the removal of the same. The term of the lease was for twenty years. In consideration of this lease, the lessee agreed ' to commence operations within one year from the execution thereof or thereafter pay to the party of the first part four hundred dollars per annum until work is commenced.' The lessee has not commenced work upon the farm leased,—nor had his assignees,—and this suit is brought to recover the money due and payable, on account of the delay in commencing operations, for the two years ending February 1, 1890, and February 1, 1891, respectively,— the four hundred dollars due on February 1, 1888, and the four

hundred dollars due on February 1, 1889, having heretofore been paid by the Ten Mile Oil and Gas Company and the Prosperity Oil and Gas Company.

"The defendant denies his liability and by way of defence sets up (1) a certain clause in the written contract and (2) certain facts which rest in parol.

"In the lease, immediately following the covenant to commence operations within one year or thereafter pay four hundred dollars per annum until work is commenced, we find these words: 'A failure to pay within sixty days after maturity works an immediate forfeiture of this lease. A cessation of work for sixty days, unless unavoidably hindered, shall forfeit this lease. A failure to commence work on the farm of Cyrus Meloy or John Johnson for sixty days from the date of this lease forfeits the lease.'

"It is contended by the defendant that the first clause of forfeiture, to wit: 'A failure to pay within sixty days after maturity works an immediate forfeiture of this lease,' can be invoked to terminate his liability, or, in other words, that it was the express intention of the parties to the lease to make the lessee's failure or that of his assignees to perform his covenants a defence against their enforcement.

"A reading of the lease shows that the lessor wished to have his tract of four hundred acres of land speedily developed. And as a spur to the operator and to compel this development an annual payment of four hundred dollars for delay was imposed upon the defendant. Anticipating however that he might not only fail to put down a well, but, through insolvency or otherwise, might become unable to pay the money, the lessor provided in the contract for a forfeiture of the lease if payment was not made within sixty days after maturity. This clause of forfeiture was inserted wholly in the interest and for the protection of the lessor, and it was competent for him to dispense with its provisions and to affirm the continuance of the contract. His right was optional or elective, and when the defendant failed to commence a well and failed to pay the four hundred dollars, the plaintiff might either forfeit the contract or affirm its continuance as he chose. This question was definitely settled by our Supreme Court in Wills v. The Manufacturers Nat. Gas Company, 130 Pa. 222. We cannot see, as was argued,

how the fact that the lease sued upon provides for a forfeiture only upon the nonpayment of the four hundred dollars distinguishes this case from the Wills case. The language of the two leases are not exactly the same but they are identical in meaning. They both provide for a forfeiture after there has been a failure to commence a well within a specified time and a failure to pay the money which became due and payable by reason of the failure to drill. Clearly the forfeiture in both leases was intended, as said by Mr. Justice CLARK, ' as a spur to the operator.' The enforcement of the payment of the money was intended as a means of enforcing the commencement of operations. A forfeiture upon a failure to drill a well or pay a sum of money is in effect the same as a forfeiture upon the failure to pay money which is only payable upon a previous failure to drill a well. Neither do we see anything in the suggestion that a failure on the part of the defendant to commence a well within one year necessarily fixes upon him a liability to pay to the plaintiff annually four hundred dollars for the remainder of the twenty years which the lease has to run, for the express terms of the lease are that the four hundred dollars are to be paid annually ' until work is commenced.' But it is said that the defendant assigned the lease within six months after its date and that he no longer has a right to go upon the plaintiff's land to drill a well and that there is no way for him to perform his covenants except to annually pay four hundred dollars until the lease expires. Suppose he does not have any control over the present holder of the lease and suppose he has parted with his right to enter upon the plaintiff's land, does that relieve him from the performance of his express covenants? Can a lessee voluntarily assign his lease and then set up that assignment as a discharge of his liabilities under the lease? Surely not. In Frank v. Maguire, 42 Pa. 82, Mr. Justice STRONG, says: ' It surely is not necessary to cite cases to prove that a tenant is bound by his express contract to pay rent, even after he had assigned the term with his landlord's assent and though the landlord has accepted the assignee as his tenant and received rent from him.' In the Washington Nat. Gas Co. v. Johnson, 123 Pa. 576, it is held that ' owing to his privity of contract, a lessee's liability upon his covenants in an oil and gas lease continues after his assignment of the lease.' The de-

fendant knew or ought to have known that the law continued his liability notwithstanding his assignment, and he cannot now set up the failure of his assignees to commence operations under the lease as a defence in this case.

"Thus far we have been considering the defence set up upon the theory that the lease sued upon and as written expresses the contract between the parties; and upon the face of this lease as exhibited to the court in pursuance of the defendant's prayer of oyer and upon the undisputed averments of the plaintiff's statement we are of opinion he is entitled to judgment.

"This brings us to the second branch of the defence.

"A number of facts resting in parol are relied upon to defeat the plaintiff's claim. It appears that the defendant took this lease with a number of others in the same locality with the view of having the territory tested and developed by a company which he and some others were about to organize and have incorporated; that when the lease in suit was taken it was his purpose to assign it to the company when organized, and of this fact he informed the plaintiff; that the company was organized and the lease assigned in accordance with the understanding of the lessor and lessee when the lease was taken. It further appears that the plaintiff would not have leased his farm to the defendant had he not been assured that the defendant had arrangements made with other persons to assist him in developing the land and that the lease would be assigned to the company that the defendant and others were about to organize for that purpose. From these facts it is contended that the company which was afterwards incorporated under the name of the Ten Mile Oil and Gas Company and which took the lease by assignment is the real lessee, and that the defendant in executing the lease assumed no personal liability by reason thereof; that until the company was incorporated he held the lease as the trustee of the plaintiff Stephen Sanders, and when he assigned it to the company his trust was fully executed, and that the company was the party that was first liable under the covenants of the party of the second part, the defendant, by assigning the lease, having done all that the plaintiff expected him to do; and that to now hold him absolutely bound to perform the covenants of the written agreement would be against equity and good conscience.

" Granting the facts to be as set out in the affidavit of defence —and waiving the question whether an express agreement resting in parol made at the time the written lease was delivered can be set up to change the lessee's liability (Act of 1856, P. L. 533; Balbec v. Donaldson, 2 Grant, 459) we do not think they are sufficient to justify a chancellor in modifying the written contract sued upon so as to relieve the defendant from the performance of the covenants which he therein took upon himself personally and without condition. The fact that he told the plaintiff that a company would be organized to develop the land and that the lease would be assigned to it was nothing more than an inducement for the execution of the lease to the defendant. The plaintiff wanted his land developed, and having this in view he might not have been willing to lease to the defendant unless he knew or was assured that the defendant had backing. Such a precaution on the plaintiff's part and his refusal to make the lease until he was assured that the land leased would be developed by a company cannot in any way affect the true interpretation of the written contract afterwards entered into by the parties and which is unambiguous in its terms.

" The language of the written assignment of this lease made by the defendant six months after its execution in no way suggests that he was the trustee of the plaintiff or that he was anything else than the bona fide lessee and owner of the estate therein created, or that under it the Ten Mile Oil and Gas Company took title except as an assignee. If the defendant was not the lessee and the company only held as assignee, then no one sustained a contract relation to the plaintiff which could be made the basis of a suit to enforce the performance of the covenants of his lease; only through the privity of estate could he call anyone to account in an action at law. It is hardly to be presumed that the plaintiff who appears, by the terms of the lease, anxious to have his farm developed would so contract for its development as to leave no one responsible to him as a lessee and with whom there was privity of contract.

" Neither can it be held that the defendant is not liable because he was the agent of the Ten Mile Oil and Gas Company which had no existence at the date of the lease, nor because he was the agent of the persons who afterwards did organize this com-

pany.   Having taken the lease in his own name he cannot rid himself of personal liability by showing such agency.   'Where parties contract as agents and for the benefit of a company but the contract was under their own hands and seals they were individually liable and an action of covenant was properly brought against them as individuals : ' Quigley v. DeHass, 82 Pa. 267 ; Ulam v. Boyd, 87 Pa. 478.

" Having disposed of the contention that the defendant was not acting for himself when he took the lease, but was a trustee of the plaintiff, or if not a trustee then an agent for other parties, let us now notice two or three other matters set out in the affidavit of defence.

" 1st.  It is averred that the copy of the lease attached to the plaintiff's statement is not correct.   In compliance with the defendant's prayer of oyer the lease sued upon was produced in court and it appears that this allegation is not well founded.

" 2d.  The facts averred in the 7th paragraph of the affidavit of defence do not in our opinion constitute a good defence. This paragraph, if we understand its purport, attempts to set up a forfeiture of this lease, but it nowhere avers that the plaintiff ever elected to or did in fact forfeit it while in the hands of the Ten Mile Oil and Gas Company.   It simply avers that 'said lease became and was forfeited to the said Stephen Sanders.'   Taking the whole affidavit it is clear that this averment of the defendant is but his opinion of the legal effect of the nonpayment of the four hundred dollars due February 1, 1889, and is not intended to convey the idea that Stephen Sanders in any way actually elected to forfeit the lease.   The fact that it is stated in the affidavit that the Ten Mile Oil and Gas Company assigned the lease to the Prosperity Oil and Gas Company shows that it was not actually forfeited by the plaintiff while in the hands of the first named company, and the 8th paragraph sets out that the lease is still in the hands of the last named company and that it stands ready to formally surrender it.

" 3d.  The 9th paragraph of the affidavit does nothing more than set up that defendant did not fully understand the legal import of the written contract which he executed, and that if he had he would not have signed it.

" This may be and no doubt is true.   The defendant with

many others in our county prior to the ruling of the Supreme
Court in the Wills case believed the clause of forfeiture in
leases like the one sued upon inserted therein for the benefit
of both parties, and that the lessee by his own default could
put an end to his own covenants. In three different cases ap-
pealed from this court, the Supreme Court has said this is not
the law, and in interpreting this written contract we must fol-
low the interpretation given by the Supreme Court and not
that put upon it by the defendant in his affidavit of defence.

" 4th. It is alleged that by a mutual mistake of the parties
the four hundred dollars, which are to be paid if a well is not
completed within one year, is made payable at the end of the
year, when it should have been made payable in advance.
Granting that this is so, and amending the lease in this partic-
ular, we cannot see how it affects the plaintiff's case. In the
Wills case the money due on account of delay in commencing
operations was payable in advance. It would be useless to sub-
mit to a jury the question whether there was a mutual mistake
made in drawing the lease in this particular, when it is imma-
terial to the issue here joined whether such mistake was made
or not. In disposing of this case we have taken it for granted
that such a mistake was made.

" On the whole case we are of opinion :

" 1st. That the benefit of the clause of forfeiture in the
lease sued upon cannot be invoked by the defendant to relieve
himself of liability.

" 2d. That it is not averred in the affidavit of defence with
sufficient clearness and distinctness that the plaintiff before
this suit was brought elected and did by his own act take ad-
vantage of this clause and forfeit the lease to require that ques-
tion to be submitted to a jury.

" 3d. That the defendant in face of the terms of the written
lease and his written assignment thereof cannot relieve himself
of personal liability by showing that he was acting as the agent
of a proposed corporation or the persons who were about to or-
ganize such a company.

" 4th. That the facts set out in affidavit of defence do not
make the defendant a trustee of the plaintiff whose only duty
was to assign the lease to the Ten Mile Oil and Gas Company
when formed.

" 5th. That the facts set out in the affidavit of defence are not sufficient in equity to move a chancellor to so modify and change the express terms of the written contract as to relieve the defendant of the liability which it under the law imposes."

" And now, Sept. 25th, 1891, judgment entered in favor of the plaintiff and against the defendant for want of a sufficient affidavit of defence."

*Error assigned* was above decree, quoting it.

*J. H. Murdoch, David Sterrett* and *M. L. A. McCracken* with him, for appellant, cited : Taylor, L. & T. §§ 247, 371 ; Sharon Iron Co. v. Erie, 41 Pa. 341 ; Fisher v. Milliken, 8 Pa. 111 ; 12 A. & E. Enc. Law, 717, 1020 ; Shegan v. Young, 23 Pa. 18 ; Phillips v. Meily, 106 Pa. 543 ; Park v. Chadwick, 8 W. & S. 98 ; Rearich v. Swinehart, 11 Pa. 233 ; Building Asso. v. Hetzel, 103 Pa. 507 ; Cake v. Pottsville Bank, 116 Pa. 264 ; Reading Iron Works, 150 Pa. 369.

*Albert S. Sprowls,* for appellee, cited : Erie v. Butler, 120 Pa. 374 ; Wh. Agency, § 298 ; Braddle v. Glass Co., 16 Pick. 347 ; Bank of N. A. v. Hooper, 5 Gray, 567 ; Anderton v. Shoup, 17 Ohio St. 128 ; Lindo v. Castro, 43 Cal. 497 ; Jones v. Ins. Co., 14 Conn. 501 ; James v. Bixby, 11 Mass. 36 ; Huntington v. Knox, 7 Cush. 371–4 ; Babbett v. Young, 51 N. Y. 238 ; 12 A. & E. Enc. Law, 994, note 5 ; Kiersted v. R. R., 69 N. Y. 343 ; Quigley v. DeHass, 82 Pa. 267 ; Ulam v. Boyd, 87 Pa. 477 ; 1 Sm. L. Cas., ed. 1889, page 226 ; Dewey v. Dupuy, 2 W. & S. 553 ; Frank v. McGuire, 42 Pa. 78 ; Borland's Ap., 66 Pa. 473 ; Wash. Nat. Gas Co. v. Johnson, 123 Pa. 591 ; Wills v. Gas Co., 130 Pa. 222 ; Ray v. Gas Co., 138 Pa. 576–86; Galey v. Kellerman, 123 Pa. 492; Ogden v. Hatry, 145 Pa. 640 : Jones v. West. Penna. Nat. Gas Co., 146 Pa. 204.

OPINION BY MR. JUSTICE McCOLLUM, January 3, 1893 :

It is not seriously contended that any error was committed in the construction of the lease as it is written, or in the application to the forfeiture clause of the principle settled in Wills v. The Manufacturer's Natural Gas Co., 130 Pa. 222 ; nor can it be successfully maintained that the mere assignment of such lease by the appellant to the Ten Mile Oil & Gas Company discharged him from liability on his covenants therein : Frank

v. Maguire, 42 Pa. 82; Washington Natural Gas Co. v. Johnson, 123 Pa. 576. But it is claimed that certain matters are stated in the affidavit of defence which show the written lease ought to be reformed so as to admit of a construction which will release him. By the construction contended for, and based on the proposed modification of the lease, the only duty of the appellant thereunder was to transfer it to an oil and gas company, to be organized for the purpose of testing the adjacent territory, and his assignee acquired an option, for which it gave nothing, and incurred no liability to the lessor. It is very evident that a reformation which will accomplish such results, and practically destroy the written and sealed agreement of the parties, must have something more substantial to support it than inferences founded on equivocal averments. When a party to an action, in order to prevent judgment against him for the claim, is required to file his sworn answer to it, he is expected to state clearly and distinctly the facts which constitute his defence; and when the nature and character of the defence are such that the law exacts "clear, precise, and indubitable evidence" to sustain it, the importance of a plain and concise statement of it becomes obvious. Injustice is not likely to result from the exaction of such a statement of the defence, especially where it is apparent, as in this case, that it was prepared by competent counsel, who knew what was required, and presumably presented it in as favorable light for their client as his recollection and conscience warranted. Certainly a party who seeks to set aside his written obligation on the ground that he entered into it on the faith of a contemporaneous parol agreement cannot justly complain if he is required to state such agreement with clearness and precision.

The affidavit of defence in this case does not sustain the claims that are made upon it, or authorize any material modification of the lease. It does not allege that the execution of the lease was induced by any fraud or misrepresentation of the lessor, or contain any distinct averment of an agreement by which the lessee was to be released from the liability imposed by its written terms. The lessor's knowledge of his lessee's intentions respecting the development of the property and the transfer of the lease does not destroy the latter's express covenant to commence operations on the demised premises within

one year, or thereafter to pay, while in default, the sum of $400 per annum to his lessor.   It is not stated in the affidavit of defence that the lessor at any time declared the lease forfeited for noncompliance with its terms, but it does appear therein that the appellant's assignee, by its sale and transfer of the lease to Brown, recognized it as in full force.   It is true that the appellant in his affidavit says that his lessor encouraged Brown and his associates to make a further test of the territory for the production of oil and gas, and that he " waived to them the forfeiture of the said leasehold, and accepted from them the sum of four hundred dollars, and thereby gave to them the privilege of holding his land for another year."   This averment is, however, entirely consistent with the view that the lessor was so desirous of having the work done for which he contracted that he refrained from exercising his right to declare the lease forfeited for delay in the performance of its covenants. It will not be seriously affirmed, we think, that, by the lessor's failure to forfeit the lease for the default of his lessee, he lost his right to enforce it.

We might specify other defects and omissions in the affidavit which make it unsatisfactory, and clearly insufficient to justify the proposed modification of the written lease, but, as the whole subject is so intelligently presented and considered in the able and exhaustive opinion of the learned judge of the court below, we regard further specification of them as unnecessary. The affidavit appears to have been drawn with a view to create the impression that the execution of the lease was induced by certain agreements between the parties, which render its enforcement, according to its terms, unjust and oppressive, and that it has been forfeited by the conduct of the lessor.   But a careful examination of the affidavit fails to disclose any specific averment of such agreement, or of any word or act of the lessor indicative of a purpose on his part to annul the lease. It is an ingenious and misleading affidavit, but it is clearly insufficient to prevent judgment for the claim founded on a breach of the appellant's distinct covenant to commence operations on the demised premises within one year, or thereafter to pay the sum named therein as compensation for his default.

The specifications of error are overruled.

Judgment affirmed.