## Pittsburg Consolidated Coal Co. *v.* Greenlee & Forst, Appellants.

*Contract—Oil and gas wells—Assignment of lease.*

Defendants, the owners of an oil and gas lease, drove a well through a vein of coal owned by a coal company. The coal company filed a bill in equity against defendants to restrain them from further operations. Subsequently defendants and the coal company entered into an agreement in writing " for the purpose of settling and adjusting all differences " between them, by which the coal company agreed to no longer obstruct the drilling of oil and gas wells, and defendants agreed to pay five hundred dollars for the first well, and, " in addition thereto, to pay five hundred dollars for each additional well drilled upon said land hereafter, the said sum to be paid before the drilling of any of said wells." Defendants subsequently assigned their lease, and other wells were drilled by their successors in title. *Held*, that defendants were liable in the sum of five hundred dollars for each well drilled after their assignment.

*Forfeiture—Waiver.*

The fact that plaintiff failed to demand from the assignee the sum stipulated for each well when begun, did not work a forfeiture of its rights under the contract, since the time of payment, being for the company's benefit, might be waived.

Argued Oct. 17, 1894.   Appeal, No. 233, Oct. T., 1894, by defendants, from order of C. P. Washington Co., May T., 1894, No. 166, making absolute rule for judgment for want of sufficient affidavit of defence. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Affirmed.

Rule for judgment for want of sufficient affidavit of defence.

From the record it appeared that, on Oct. 17, 1891, plaintiffs and defendants entered into an agreement in writing, the material portions of which were as follows:

"Whereas, the parties of the first part [defendants] are the owners of a lease for oil and gas purposes of 216 acres of the farm of J. R. Gladden, situate in Cecil township, Washington county, Penn'a., adjoining lands of McDonald heirs, Wade & Co., W. B. Moorehead and others, and are now attempting to drill a well thereon, the coal on which said land is owned by said party of the second part [plaintiffs], and whereas, the said party of the second part denies the right of the first party to drill any oil or gas wells through the coal strata in said land and are resisting the drilling of said well, and whereas the said parties of the first part have filed a bill in equity in the Court of Common Pleas of Washington county, to 712 equity docket, to restrain said second party from any interference with its operations upon said land, which said proceeding is now pending and undetermined in said court:

"Now for the purpose of settling and adjusting all differences between the said parties, it is mutually agreed as follows, to wit:

"That the bill of equity above referred to shall be dismissed at the cost of the parties of the first part, and in consideration of the following payments and covenants to be kept and performed by the parties of the first part, the party of the second part agrees to no longer obstruct the drilling upon said land:

"First, the party of the first part is to pay to the party of the second part, the sum of $500 upon the execution of this agreement as a consideration for the drilling of the well now located

upon said land and in addition thereto is to pay $500 for each additional well drilled upon said land hereafter, said sum to be paid before the drilling of any of said wells."

After the execution of this agreement, defendants completed well No. 1, drilled wells Nos. 2, 3, 4 and 5, and paid to the plaintiffs $500 for each of them; and subsequently, on Oct. 31, 1892, defendants sold all their right, title and interest in their oil leasehold to the Tidal Oil Co., and abandoned possession and control thereof. Of this sale and transfer plaintiffs had notice.

After Oct. 31, 1892, and before Aug. 11, 1893, wells Nos. 6 and 7 were drilled on the leasehold by the Tidal Oil Co. On Aug. 11, 1893, all the rights, title and interest of the Tidal Oil Co. in the leasehold were sold at sheriff's sale to A. C. Wade, trustee, who after that date put down well No. 8 in the leasehold; and, before any of wells Nos. 6, 7 and 8 were commenced to be drilled, the locations for them were furnished by plaintiffs to the parties drilling them.

On April 17, 1894, plaintiffs brought this suit against defendants to recover $500 each for the wells drilled by the Tidal Oil Co. and by the sheriff's vendee of said company, after the transfer of the leasehold by defendants.

Defendants filed an affidavit of defence in which they denied liability for any wells drilled after the assignment of the lease.

The court made absolute a rule for judgment for want of a sufficient affidavit of defence, in an opinion by MCILVAINE, P. J.

*Error assigned* was above order.

*Boyd Crumrine, J. P. Patterson* and *E. E. Crumrine* with him, for appellants.—The covenants in this case are merely personal covenants relating to merely personal acts: Mason v. Rogers, 109 Pa. 319; 4 A. & E. Ency. L. 475 *n*, 498 *n*.

There is no privity in estate between plaintiffs, the coal owners, and defendants, the prior owners of the leasehold, or the present or late owners and assignees thereof.

The case should not be confounded with the line of decisions establishing that a lessee of lands continues liable to the lessor upon all his covenants, even after an assignment of his lease: Heckman's Est., 3 Dist. R. 480; Gas Co. v. Johnson, 123 Pa.

577. Here, there is no relation of landlord and tenant between plaintiffs as landlords and defendants as their lessees.

Nor should this case be confounded in principle with that class of cases establishing the doctrine that where one has aided or procured another to commit an act of trespass from which he enjoys a benefit, he will be liable for the act though personally not connected with its commission: McCloskey v. Powell, 123 Pa. 62; McCloskey v. Powell, 138 Pa. 383; Whitney v. Backus, 149 Pa. 29; Duffield v. Rosenzweig, 144 Pa. 520.

The object in making an assignment of a leasehold is to put the assignee in place of the lessee, and when that is done the assignor ceases to have any further concern with the contract, unless he has bound himself by express contract: Blair v. Rankin, 11 Mo. 440.

Contracts are to be expounded so as to carry into effect the intention of the parties appearing on the face of the whole instrument; not from particular expressions: Davis v. Lyman, 6 Conn. 249; Buck v. Buck, 18 N. Y. 339; Proprietors v. Jones, 7 Vroom, 206.

The respective parties to this agreement were bound to know that each party's respective rights in the several portions of the land and its underlying minerals must be respected by the other, and those respective rights, notwithstanding Chartiers Coal Co. v. Mellon, 152 Pa. 286, have not yet been definitely settled.

One cannot be held responsible for the independent acts of others, unless upon an express and clear assumption of such liability.

The covenant should not be construed contra proferentem, that is, " against him who gives or undertakes, or enters into an obligation : " 2 Pars. Cont., 5th ed., 506–10 ; Adams v. Warner, 23 Vt. 411 ; Bold v. Molineux, Dyer, 14*b*, 17*a*.

The ruling that defendants are liable to pay $500 each for all the wells drilled " hereafter," or " until all the oil and gas are exhausted," will lead to results unconscionable and absurd, that cannot have been contemplated.

*John W. Donnan, A. Donnan* with him, for appellees.—The respective rights of the parties in this land were the subject-matter of the contract, and of the mutual covenants entered

into by them, and was a matter proper and necessary to be adjusted by them : Chartiers Coal Co. v. Mellon, 152 Pa. 286.

The agreement was in effect the grant of an easement by the coal owners for the benefit of the leasehold estate owned by the parties of the first part, the enjoyment of which became thereafter appurtenant to the leasehold estate in respect to which it was enacted : Horn v. Miller, 136 Pa. 656.

If the language of the contract was susceptible of more than one interpretation, it is just and reasonable that it should be construed in the sense most favorable to the promisees' interests : Jones on Contracts, § 227 ; 1 Chit. Cont. 136.

The agreement made by the defendants with the Tidal Oil Co. was to convey and assign to it " all the right, title, interest, claim and property of the parties of the first part in law, equity or otherwise of, in and to " the leasehold estates described ; and under this everything which the vendors had right or title to in connection with their leaseholds passed, although not specified : United States v. Appleton, 1 Sumn. 502 ; Blaine's Lessee v. Chambers, 1 S. & R. 169.

The question as to the liability of the assignee of the leasehold for the payment of the money stipulated to be paid for the drilling of wells by virtue of its privity of estate does not arise ; that it would be liable if it had notice of the contract is clear, as it would then take the estate of its assignor cum ōnere : Gas Co. v. Johnson, 123 Pa. 591.

OPINION BY MR. CHIEF JUSTICE STERRETT, Nov. 5, 1894 :

While the contract which is the subject of construction in this case grew out of the attempted drilling by defendants of a single well through plaintiff's intervening seam of coal, its manifest purpose was to set at rest not only the existing dispute in respect of that particular well, but other wells which defendant should desire to drill under their lease. If oil should be developed in paying quantities by that well, they would of course drill other wells to the exhaustion of that field, and provision would therefore naturally be made for them in order to avoid a repetition of the difficulties. The subject of the contract was a right of easements, in indefinite series, which were essential to the development of defendants' leasehold property and whose regulation was necessary to the safe operation of plaintiff's mines :

and it was to the advantage of both parties that their disputes should be adjusted at once and for all.   Hence it was expressly stated that the contract was made for the "purpose of settling and adjusting all differences between them:" and among the differences so settled and adjusted was the payment by defendants to plaintiff of a stipulated sum for the well then being drilled, out of which the dispute had arisen; but "in addition thereto" a like sum for "each additional well drilled upon said land" thereafter.   It is conceded that the defendants were bound for the payment of the sum stipulated so long as they themselves continued to drill; but not after the assignment of the leasehold.   Why not so long as wells should be drilled under their contract?   "Additional wells" have since been drilled; and defendants' promise was absolute and unqualified to pay for them in the manner stipulated.   The contract was, on the part of defendants, in effect an agreement to purchase, from plaintiff, rights of way involving an element of personal responsibility which could not be avoided by any ex parte act of theirs.   Their status cannot be distinguished from that of any other purchaser, of an interest in land, who has made himself personally liable for purchase money.   The contract was mutual; and neither party could modify it without the assent of the other.   It is not alleged that plaintiff has given any express assent; and it does not appear that it has done anything from which an implication of assent can be drawn.   The assignment upon which defendants rely was purely ex parte, and is a "new way of paying old debts" which no court of justice can recognize.   They continued liable, "because, although their assignment had divested them of the lease, it could not relieve them of their contract" with plaintiff: Washington Nat. Gas Co. v. Johnson, 123 Pa. 592.

It was suggested that plaintiff's recognition of the assignee's status operated as a release of defendants' liability, but defendants' assignment was the exercise of a right, incident to ownership, which plaintiff had no power to prevent, and which had no relevancy to the question of liability as between them.

So it was argued that because plaintiff had failed to demand from the assignee the sum stipulated for each well when begun, it was guilty of laches which worked a forfeiture of its right to claim: but the time of payment, being for its benefit, might be

waived, whereas the burden of payment having been on de-
fendants, the default was theirs.

It follows, therefore, that there was no error in entering
judgment, in favor of plaintiff and against defendants, for want
of a sufficient affidavit of defence.

Judgment affirmed. .