# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## HAIRSTON AND OTHERS v. HILL AND OTHERS.

January 13, 1916.

Absent, Cardwell, J.

1. CONTRACTS—*Options—Case in Judgment—Specific Performance.*—The written agreement in the case in judgment contains all of the essential elements of a valid executory contract, that is to say, competent parties, a lawful subject matter, a valuable consideration, and mutual assent, and in the light of the contemporaneous construction placed upon it by the parties themselves as revealed by the continuous and substantial acts of part performance on the part of the defendant, there is no difficulty in classifying it as a subsisting, binding agreement, complete in all material respects, and imposing reciprocal rights and obligations upon the contracting parties. It is in no sense an option, nor a mere memorandum of incomplete negotiations, but a binding contract which the plaintiffs have the right to have specifically enforced.

2. ASSIGNMENTS—*Continued Liability of Assignor Under Contract.*—A party who has contracted to pay stated royalties for ore mined, and to perform certain covenants, does not relieve himself from his personal liability to pay such royalties and to see that all the covenants imposed by the contract are performed, by simply assigning his interest under the contract to a third person.

Appeal from a decree of the Circuit Court of the city of Roanoke. Decree for the defendants. Complainants appeal.

*Reversed.*

The opinion states the case.

*Hall, Woods & Coxe,* for the appellants.

*Lucian H. Cocke* and *Staples & Cocke,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

This suit was brought by appellants against the appellees for the construction and specific performance of a mining contract. Since the decision of the circuit court turned on the construction of the contract, we deem it best to set it out in full. It reads as follows:

"This agreement, made and entered into this the 6th day of August, A. D., 1904, between Ann M. Hairston, J. T. W. Hairston and E. P. Hairston, his wife, W. H. Hairston, R. A. James and A. M. James, his wife, parties of the first part, and Frank A. Hill, party of the second part;

"Witnesseth: That the said parties of the first part, for and in consideration of the sum of five hundred dollars, cash in hand paid, the receipt of which is hereby acknowledged, and for other good and valuable considerations, do hereby covenant and agree and bind themselves to lease unto Frank A. Hill, or to anyone whom he may direct, all the iron ore of every kind and being, in, under and upon all that certain tract or parcel of land, situate, lying and being in the county of Patrick, and State of Virginia, and described as follows, known as the estate of J. A. Hairston, deceased, lying on the waters of Goblintown and Hall's creeks, adjoining the lands of Barksdale, Dillon, Stovall and others, estimated to contain 7,500 acres, be the same more or less, together with all rights of way for railroads, tramroads, haulroads, and the privilege of building ore washers, store and dwelling houses and other buildings necessary for mining, removing and shipping the ore, and the use of timber, stone and water for operating and mining said property for a term of twenty-five (25) years from the date thereof, for the price of twenty-five cents per ton royalty for magnetic iron ore and all other iron ores, and a royalty to be paid on other minerals if discovered on the land to be fixed by mutual consent of the parties, but the party of the second part is to have the first right to purchase the same.

"Said parties of the first part to have the use of farming lands not used for mining purposes.

"This agreement is to become null and void in twelve months from the first of September, 1904, unless the said party of. the second part shall commence to develop the said property, shall commence the building of a railroad to it in good faith, together with such other necessary equipments for the handling and shipping of the ore, after which time the royalties on all shipments shall be due and payable and shall be paid on the 25th of each month for all ore shipped in the previous month.

"The minimum shipments of the ore is to be as follows:

"2,000 tons for the year 1905,
3,000 tons for the year 1906,
4,000 tons for the year 1907,
5,000 tons for the year 1908,
7,000 tons for the year 1909,

and thereafter the same tonnage for each and every year during the remainder of the life of the lease.

"The royalty shall be paid on the tonnage mentioned above, whether the ore is shipped or not, and shall be paid to Miss Ann M. Hairston and Mrs. E. P. Hairston.

"And the said parties of the first part agree and bind themselves that they will sell the property herein leased and convey the same with general warranty of title free from all encumbrances unto the party of the second part, or to any one he may direct at any time on or before the first day of September, 1905, at the price of two hundred and fifty thousand dollars ($250,000.00), or to be conveyed at any time on or before September the first, 1907, at the price of three hundred thousand dollars ($300,000.00) on the following terms, to-wit: one-fourth cash, and the balance in one, two and three equal annual payments at 6 *per cent.* interest, a vendor's lien or deed of trust to be reserved on said property to secure said deferred payments."

This paper was duly executed and acknowledged by all the parties and delivered.

The circuit court was of opinion that the agreement "was an *incomplete contract;* or in common parlance . . . an 'option.'" and, therefore, entered the decree under review dismissing the original and amended bills.

We cannot concur in the foregoing conclusion, but to the contrary are of opinion that the instrument contains all the essential elements of a valid executory contract—that is to say, competent parties, a legal subject matter, a valuable consideration, and mutual assent. (Minor's Inst., Pt. I (1st Ed.), p. 16.)

But even if the language of the contract were less plain, still, in the light of the contemporaneous construction placed upon it by the parties themselves as revealed by continuous and substantial acts of part performance, we would have no difficulty in classifying it as a subsisting binding agreement, complete in all material respects, and imposing reciprocal rights and obligations upon the contracting parties. With the exception of the concluding clause (which is not involved in this litigation), the paper in no sense is an option, nor is it a mere memorandum of incomplete negotiations, in which the minds of the parties never met and from which either party could recede at will.

It is a familiar rule in the interpretation of contracts that regard must be given to the intention of the parties and their version of its meaning, and that an unreasonable construction is always to be avoided. In this instance, it would not only be unreasonable, but opposed to common experience, to believe that if Hill and his associates had placed upon this contract the construction it received in the lower court, and which is insisted on here, that they would have expended their time, labor and means upon any such venture. And yet to summarize, the undisputed evidence shows that (a) they paid in the outset $500 earnest money; (b) they underwent the trouble and expense of incorporating and organizing the Virginia Ore

and Lumber Company, and assigned and set over the contract to it; (c) they took possession of the property under the contract, and made extensive developments of the ore, and expended $70,000 upon it and the adjoining tract in machinery and appliances for mining the ore and preparing it for market; (d) they, in good faith and within a year from the date of the contract, commenced the construction of a railroad, and completed and equipped and operated a broad-gauge railroad from a station on the Norfolk and Western railway to the property, covering a distance of twelve and one-half miles; (e) they also paid minimum royalties, the rent reserved for the premises, for the years 1905 and 1906, of $500 each. In short, as we are told by the treasurer of the Virginia Ore and Lumber Company in his deposition, the cash expenditure on these enterprises reached a total of $325,000. It is needless to say that transactions of this magnitude may not lightly be overturned on the theory that the instrument under which the parties lived and operated for years possessed no contractual value or validity, and could be abandoned at the pleasure of either party.

It is not necessary to go outside the decisions of this court to find authority for the well-marked dividing line between the class of agreements which constitute the revocable licenses, and those which, like the contract in this case, grant an estate or easement in land. *Barksdale* v. *Hairston,* 81 Va. 764 (which, by the way, involved this identical property), and *Church* v. *Goshen Iron Company,* 112 Va. 694, 72 S. E. 685, afford illustrations of the former class, while *Young* v. *Ellis,* 91 Va. 297, 21 S. E. 480, and *Shenandoah Land & Anth. Coal Co.* v. *Hise,* 92 Va. 238, 23 S. E. 303, exemplify the latter.

The case of *Boisseau* v. *Fuller,* 96 Va. 45, 30 S. E. 457, relied on by appellees, is an authority for appellants. That case holds that, "If the parties are fully agreed, there is a binding contract, notwithstanding the fact that a formal contract is to be prepared and signed." In that case the subject

of negotiation was the lease of a warehouse, the term to commence the beginning of the following year. There were no acts of part performance, and the court found, *as a matter of fact,* that it was the intention of the parties that the proposed arrangement to be binding should be consummated "by a regular lease subject to the approval of all parties." The difference between the two cases is obvious.

It is true that pending negotiations concerning the preparation of a lease by appellants to the Virginia Ore and Lumber Company differences of opinion on matters of detail arose, involving questions of construction of certain terms employed in the original contract, or outside matters of compromise. There was a misunderstanding, for example, as to whether the word "ton," used in the contract, meant a short or long ton as applied to iron ore; . yet, the expert evidence showed that the latter was the correct import of the word in that connection. These questions of construction arise in a majority of cases that come before the courts for the interpretation and enforcement of contracts, but are never considered as ground for canceling the instrument.

In February, 1909, a compromise agreement was reached and embodied in a mining lease to the corporation, which was signed by all parties and placed in the hands of the treasurer of the corporation; but Hill subsequently insisted on two additional stipulations, neither of which was mentioned in the contract of 1904, and to which appellants declined to accede. Thereupon, appellees continuing to make default in the payment of minimum royalties, appellants brought this suit. They filed with their bill and executed lease to the defendants in substantial compliance with the contract, which was tendered to the lessees before the institution of the suit, but which they declined to accept. It appears that appellants have never disturbed appellees in their possession of the property, or in any respect interfered with their mining rights and operations

thereon; and, moreover, that at all times they have been able, ready and willing to execute a lease to appellees, incorporating therein their *entire contract* of August 6, 1904.

In these circumstances appellants are entitled to specific performance of the contract and the execution and acceptance by the appellees of the lease filed with the original bill; and also to personal decrees against appellees for the minimum royalties due, with interest, and for those which hereafter shall become due, during the remainder of the term, in accordance with the provisions of the contract.

We are furthermore of opinion that the assignment by the appellee, Frank A. Hill, of the contract to the Virginia Ore and Lumber Company, Incorporated, so far as appellants are concerned (he never having been released by them), did not relieve him from personal liability to pay the royalties and to see that all the covenants imposed by the contract are performed. *Wainwright* v. *Bankers L. &c. Co.,* 112 Va. 630, 634, 72 S. E. 129, Am. Cas. 1913B, 887; 2 Taylor on Landlord and Tenant, sec. 438; *Sanders* v. *Sharp,* 163 Pa. 555, 25 Atl. 524; *Pittsburgh Con. Coal Co.* v. *Greenlee,* 164 Pa. 549, 30 Atl. 489; *Jordan* v. *Ind. Water Co.,* 159 Ind. 337, 64 N. E. 680.

The decree complained of for the reasons stated, must be reversed, and the case remanded for further proceedings to be had therein conformable to the views expressed in this opinion.

*Reversed.*