# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, Russell and Athey
Argued at Fredericksburg, Virginia


SRIJAYA K. REDDY

                                          MEMORANDUM OPINION[*] BY
v.       Record No. 1965-18-4           JUDGE CLIFFORD L. ATHEY, JR.
                                                MARCH 24, 2020

NEIL J. ADLER


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Louise M. DiMatteo, Judge

Kimberly A. Skiba-Rokosky (Surovell Issacs & Levy, PLC, on
briefs), for appellant.

Jennifer A. Mullett (Mullett Dove Meacham & Bradley, PLLC, on
brief), for appellee.


    Srijaya K. Reddy ("wife") appeals a final decree of divorce from Neil J. Adler

("husband"), from the Arlington County Circuit Court ("trial court").  Wife presents a total of

seven assignments of error:

> 1.  The trial court erred by failing to give all of the provisions of
> the Pre-marital Agreement executed on August 11, 2015 (the
> "Pre-marital Agreement", or "agreement") meaning in determining
> how to address the mortgage previously encumbering the property
> located at 2311 Albemarle Street, Arlington, Virginia (the "marital
> residence") and the disposition of the net proceeds of sale of the
> marital residence.
>
> 2.  The trial court erred by failing to classify the marital residence
> as "marital property," as that term is defined in Section 4D of the
> Pre-Marital Agreement.
>
> 3.  The trial court erred by failing to classify the mortgage
> previously encumbering the marital residence as "marital debt" as
> that term is defined in Section 4F of the Pre-marital Agreement.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

4. The trial court erred by failing to find that each party was ultimately responsible for the payment of fifty percent (50%) of the mortgage encumbering the marital residence, a "marital debt" pursuant to the terms of the Pre-marital Agreement.

5. The trial court erred by failing to apply Section 4K of the Pre-marital Agreement and awarding [wife] all of the net proceeds of sale from the marital residence as a return of her traceable Separate Property contributions to its purchase.

6. The trial court erred by failing to apply section 4K of the Pre-marital Agreement independent from deciding whether any reimbursement was due to [wife] for her Separate Property contributions toward [husband's] share of the mortgage under Section 7B of the Pre-marital Agreement.

7. Especially in light of Sections 5C, 7B, and 7C of the Pre-marital Agreement the trial court erred by failing to order [husband] to reimburse [wife] for one-half of the mortgage payments made by her from the date of separation to the date of sale of the Marital residence (i.e. to reimburse her the sum of $92,707.21), in addition to granting her all of the net proceeds of sale, to be paid forthwith.

Finding wife's arguments unpersuasive, we affirm the trial court's decision.

I. BACKGROUND

Wife married husband on October 10, 2015. Prior to the marriage, the parties executed a pre-marital agreement that specified the parties' rights and obligations should they become divorced. In July 2016, the parties purchased, as tenants by the entirety, the marital residence located in Arlington, Virginia, for $1,799,000. At closing, wife paid out of her separate investment account $324,883.47 toward the purchase price of the marital residence. Husband and wife borrowed the balance from SunTrust Mortgage, Inc. on a thirty-year note, resulting in a monthly payment of $8,338.85 for the marital residence. For the months of August and September 2016, husband paid a total of $3,900 towards the monthly mortgage payment, with the wife paying the remaining monthly mortgage of $12,777.70 for those two months.

On September 14, 2016, the parties separated after living in the home for almost two months. The husband agreed to move out and that wife would continue to reside in the marital

home until their residence was either sold or that the ownership and debt related thereto was resolved during their divorce proceeding. Husband testified at trial that the parties agreed, upon his leaving the home, that husband would pay his own living expenses and that wife would pay the monthly mortgage associated with the marital residence. Wife did not rebut this testimony at trial, and she paid the $8,338.85 monthly mortgage payments until the marital residence was sold on June 11, 2018, prior to trial.

In April 2018, wife filed a motion to compel the husband to contribute half of the monthly mortgage payment for the marital residence going forward, but the wife did not seek contribution from husband before filing this motion and never docketed the motion with the trial court for briefing or oral argument on her motion prior to the sale of the marital residence. Wife never sought reimbursement for mortgage payments she made between September 2016 and April 2018, until trial.

The marital residence was ultimately sold for $1,710,000. After satisfaction of obligations at closing, $177,605.49 remained in net proceeds.

At trial, the court was asked to interpret the parties' pre-marital agreement. Based thereon, wife argued that husband was required to reimburse her for fifty percent of the mortgage payments that she solely paid from September 2016 to April 2018. Wife also sought the entirety of the funds held in escrow from the sale of the marital residence as her contribution from "separate property"[1] toward the purchase of the marital residence.

---

[1] The terms separate property, marital property, separate debt, and marital debt are intended to be defined consistent with the terms of the pre-marital agreement and not necessarily with Code § 20-107.3. Section 4B of the pre-marital agreement states that the parties are defining these terms "in a manner peculiar to their objectives, and that such definitions may depart from the definitions . . . otherwise applicable by operation of law in the absence of this Agreement."

Husband agreed that the net proceeds from the sale of the marital residence should be returned to wife as her separate property contribution. Husband argued that under the pre-marital agreement he was not responsible for reimbursing wife for the mortgage payments she paid while they were separated and she was exclusively living in the marital residence. Husband also argued that since the marital residence had been sold, and the mortgage fully satisfied prior to trial, pursuant to the terms of the pre-marital agreement, there was no marital residence to classify or divide and no marital debt to be allocated related to the marital residence.

On October 12, 2018, the trial court issued a letter opinion that provided wife with the balance of the funds held in escrow from the sale of the marital residence. The trial court also ruled that husband had no obligation to reimburse wife for the post-separation mortgage payments pursuant to the pre-marital agreement. The trial court refrained from classifying the marital residence as outlined in the pre-marital agreement because the marital residence was no longer property owned by the parties, either marital or separate, at the time of trial. In addition, since the mortgage on the marital residence was fully satisfied by the time of trial, the trial court also held that there was no debt arising therefrom for classification as either marital or separate.

The trial court entered a final decree of divorce, incorporating its letter opinion, on November 16, 2018. Wife moved the trial court to reconsider its ruling regarding the post-separation mortgage payments and asked the trial court to award wife fifty percent of the payments made by her post-separation. On November 27, 2018, the trial court summarily denied wife's motion to reconsider. Wife then filed additional objections to the divorce decree on December 6, 2018. This appeal followed.

## II. ANALYSIS

### A. PRE-MARITAL AGREEMENT

Pre-marital agreements are contracts subject to the rules of construction and interpretation applicable to contracts generally. Davis v. Davis, 239 Va. 657, 662 (1990). This Court reviews a trial court's interpretation of a contract *de novo*, as it has "equal opportunity to consider the words of the contract within the four corners of the instrument itself." Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631 (2002) (quoting Wilson v. Holyfield, 227 Va. 184, 198 (1984)).

However, this Court reviews the evidence in the light most favorable to the prevailing party below and grants them all reasonable inferences fairly deducible from that evidence. McGuire v. McGuire, 10 Va. App. 248, 250 (1990) (citation omitted). The burden is on the appealing party to show in the record that reversible error was committed. Lutes v. Alexander, 14 Va. App. 1075, 1077 (1992).

In this case, wife assigns error to the trial court's decision not to classify the former marital residence as "marital property," or the mortgage formerly associated with the home as "marital debt" as defined in the pre-martial agreement. Wife also assigns error to the trial court's ruling that husband was not required to reimburse wife for fifty percent of the mortgage payments from the date of separation to the date of sale of the marital residence.[2] Finding no error, we affirm the ruling of the trial court.

In the interpretation of a contract, the Court "must gather the intent of the parties and the meaning of the language . . . from an examination of the entire instrument, giving full effect to the words the parties actually used." King v. King, 40 Va. App. 200, 206 (2003) (internal

---

[2] Wife also assigns error to the trial court's determination that wife is entitled to one hundred percent of the proceeds of the sale of the marital residence to which husband agreed and consented. Any such error would be in wife's favor and thus has no merit.

citations omitted). Specific provisions of a contract govern over one that is more general in nature. Jimenez v. Corr, 288 Va. 395, 409 (2014). "It is a familiar rule in the interpretation of contracts that . . . an unreasonable construction is always to be avoided." Hairston v. Hill, 118 Va. 339, 342 (1916).

Paragraph 4D of the pre-marital agreement defines the term marital property as follows:

> For all purposes of this Agreement, the term "Marital Property" shall mean only that property: (a) that was acquired after the date of the parties' marriage until the earlier of the date of their last separation . . . or until the death of one of the parties; and (b) is jointly titled.

Paragraph 5C, subsection i, of the pre-marital agreement, however, determines the date of the valuation of marital property and defines the parties' responsibilities for the payment of marital debt effective upon the happening of an annulment or divorce. The pre-marital agreement provides, in pertinent part, as follows:

> C. Marital Property and Marital debt-*in the event of an annulment or divorce*, any Marital Property and Marital Debt shall be divided as follows:
>
> i. Each party shall receive one-half (50%) of the value of all of the Marital Property, and shall be solely liable for one-half (50%) of the Marital Debt. No court shall have the authority to make an equitable distribution award or other division of the Marital Property and Marital Debts. The date of valuation for the Marital Property shall be the date of the parties' final separation . . . ; however, if . . . litigation/arbitration is commenced to determine the division of any Marital Property and/or Marital Debts, *the date of valuation shall be the date of the hearing/arbitration.*

(Emphasis added.)

Here, the agreement is silent as to any responsibility of the parties for the payment of marital debt during the marriage and up to the time of divorce. Pursuant to the terms of the pre-marital agreement, a party's liability for fifty percent of the marital debt is triggered only in the event of a divorce or annulment. Additionally, the valuation date to determine if property or

- 6 -

debt is "marital," in the event of arbitration or litigation, is the date of the hearing. This clause of the pre-marital agreement is only triggered in the event that the parties enter into litigation or arbitration, and litigation has, in fact, occurred.

On the date of the hearing in this case, the husband and wife did not own the marital residence, nor did they owe any marital debt for purposes of distribution or allocation. The proceeds of the sale of the marital home held in escrow were distributed, in their entirety, to the wife with the assent of the husband.

Wife additionally relies on Paragraph 7B of the pre-marital agreement as grounds for the trial court finding that husband must reimburse her for fifty percent of the post-separation mortgage payments. However, her suggested interpretation would require this Court to impermissibly add terms not found in the four corners of the document. See Jones v. Jones, 19 Va. App. 265, 269 (1994) ("Where the agreement is plain and unambiguous in its terms, the rights of the parties are to be determined from the terms of the agreement and the court may not impose an obligation not found in the agreement itself.").

Paragraph 7B reads as follows:

> If a creditor or other third party obtains payments or satisfaction in connection with the obligation of a party out of the other party's Separate Property, the other party shall be entitled to full reimbursement from the incurring party or from his or her estate.

Here, a creditor or other third party simply obtained payments on the jointly held mortgage of the marital residence while the parties were separated until the date that it was sold. A full examination of the pre-marital agreement, giving effect to the words used to determine the intent of the parties, shows that the trial court did not err in declining to award wife reimbursement for her post-separation mortgage payments even in light of paragraph 7B. The terms of the pre-marital agreement, taken in a light most favorable to the husband as the prevailing party below, show that wife agreed that husband would not be liable for fifty percent

of the mortgage, either pre-separation, or post-separation as he only contributed $3,900 towards the payment of the more than $16,000 mortgage obligation during the two months he resided in the home.

The pre-marital agreement simply does not establish a fifty percent joint sharing of debts during the marriage or post-separation as the wife contends. Moreover, since the only marital property, the marital residence, had been sold prior to the hearing, and the mortgage encumbering the residence satisfied, there was no property or debt, either marital or separate, for the trial court to classify, distribute, or allocate. The only remaining property, the proceeds from the sale of the marital residence held in escrow, was awarded to wife by the trial court as her separate property paid toward the purchase of the marital residence. Any other reading of the pre-marital agreement would lead to an unreasonable construction. See Hairston, 118 Va. at 342 (holding that an unreasonable construction is always to be avoided).

## B. ATTORNEY'S FEES AND COSTS

Husband asks this Court to award his attorney's fees and costs incurred on appeal pursuant to paragraph 21 of the pre-marital agreement. Paragraph 21 of the agreement provides that, "[i]n the event any litigation is brought by either party concerning the interpretation or enforcement of this Agreement, the party who is found to substantially prevail in said action shall be awarded his/her reasonable expenses incurred in said action from the other party." Finding that husband has substantially prevailed in this appeal, he is therefore entitled to his reasonable attorney's fees and costs related to this appeal. We therefore remand this case to the trial court to determine the quantum of reasonable attorney's fees and costs incurred by husband as a result of the wife's appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695 (1996).

III. C<small>ONCLUSION</small>

For the foregoing reasons, we affirm the trial court's ruling.  We remand this case to the trial court in order to determine and award the reasonable attorney's fees and costs incurred by the husband, which also shall include any reasonable attorney's fees and costs incurred as a result of the remand hearing.

<u>Affirmed and remanded.</u>