Statement.

### Wytheville.

### CAMP v. WILSON.

#### JUNE 29, 1899.

1. CONTRACTS—*Doubtful Construction—Parties' Construction—Question for Jury.*—In a doubtful case the construction placed upon a contract by the parties will be accepted by the court, but what construction has been so placed is a question of fact, and, in an action at law, is to be determined by a jury.

2. WRITTEN CONTRACTS—*Construed by Court—Oral Contracts—Conflicting Evidence—Province of Jury.*—It is the duty of the court to construe written contracts, but if it is necessary to resort to oral evidence to prove the contract, or the facts in the light of which it is to be read, and the evidence is conflicting, it is for the jury to determine what the contract is.

3. MONTHLY SETTLEMENTS—*Finality—Intention to Claim Damages—Knowledge of Claims—Notice—Waiver.*—In the absence of fraud or mistake, monthly settlements between a contractor and his principal, in which the amount of work done is determined and paid for, should be held to be final and conclusive between the parties, unless made with a knowledge on the part of one of the parties that the other intends to claim of him, on a final settlement, damages for his failure to fully comply with his contract. Whether such knowledge existed is a question to be determined by the jury upon a consideration of all the evidence. Notice of an intention to claim such damages at an early stage of the dealings between the parties, will be deemed to have been waived, when followed by a subsequent course of dealing at variance with such a purpose.

Error to a judgment of the Circuit Court of Nansemond county, rendered May 13, 1898, in an action of covenant,

wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Prince & McLemore*, for the plaintiff in error.

*R. H. Rawles* and *Lee Britt*, for the defendant in error.

KEITH, P.:

Camp and Wilson entered into a contract from which the following extract is made:

" This agreement, entered into on the 11th day of September, 1889, between Isaac T. Wilson of the first part, and W. N. Camp, all of Nansemond county, State of Virginia, of the second part, witnesseth: That whereas the said Isaac T. Wilson of the first part, for the consideration hereinafter stipulated, has bargained and agreed to cut, haul, and deliver to the said W. N. Camp, the second party, from the timbered lands belonging to the Gay Manufacturing Company along the line of the Suffolk and Carolina railroad, and those on the A. & D. R. R., forty thousand feet of merchantable saw-mill logs per day, or an average of about that quantity per day, for a period of two years, or in other words about ten millions of feet for each year, seven millions feet from timber on the Suffolk & Carolina road, and three millions feet from the timber on the A. & D. R. R. at or near what is known as Hollands Corner."

By the terms of this contract it was expected to occupy about the period of two years in its execution, and, in accordance with it, the parties thereto commenced operations. At the end of the month the quantity of lumber cut and delivered by Wilson to Camp was ascertained, and an account made out which was paid by Camp about the middle of the succeeding month. This was the general course of business, though it happened upon one or

two occasions that the account was not settled for two, or it may be, three months. During the conduct of the business, Wilson complained that standing trees were not furnished, and that in other respects Camp had not complied with his contract, whereby he had been delayed to his serious loss because his business required a large equipment of men, horses, and material, and he notified Camp that he intended to hold him responsible for the damages thus sustained, which were not embraced in any of the periodical settlements made between them. On the other hand, there is evidence tending to prove that the monthly settlements before mentioned were made by Camp, and the money received by Wilson, without making any objection or protest. When the work was completed under the contract, Wilson sued Camp in the Circuit Court of Nansemond county for the time lost and damages sustained by reason of Camp's delay in providing standing timber to be cut, hauled, and delivered in accordance with the terms of the contract. Wilson recovered a judgment for $1,500, and, Camp having taken sundry bills of exceptions to the rulings of the Circuit Court, the case is now before us upon a writ of error.

During the progress of the trial Camp asked the court for two instructions, which are as follows:

"First. The court instructs the jury that by the contract of September 11, 1889, there is no obligation on the defendant to furnish I. T. Wilson, the plaintiff, any standing timber, and that if they believe from the evidence that the damages sustained by the plaintiff was because of a failure to obtain, at convenient seasons, standing timber from the lands of the Gay Company, that he cannot then recover from the defendant, unless they further believe that said defendant was the cause of plaintiff's failure to get said timber."

"Second. The court instructs the jury that if they believe from the evidence that monthly or other periodical settlements of accounts were made between W. N. Camp and I. T. Wilson

during the continuance of the contract between them, for the purpose of showing the standing of the accounts, and ascertaining the balance due from one to the other; and further believe that such balance, when found due to Wilson, was paid to him by the defendant, W. N. Camp, without objection on the part of Wilson to any item therein, or to the balance as thus ascertained and received, then the court instructs them that same would be an account stated, and the plaintiff is barred from recovering damages growing out of the transaction of the parties prior to said account and settlement, unless they further believe that said balance, when accepted by said Wilson, was received by him in ignorance of the fact that such damages had been caused, or that there was some fraud in the making up of said account."

The court refused to give these instructions, and in lieu thereof gave instructions numbered 7 and 13, which are as follows:

" 7. The court instructs the jury that, by a true construction of the contract between Camp and Wilson, it became the duty of Camp to use all reasonable means in his power to secure necessary rights of way, and standing timber from the Gay Company, in sufficient quantities to enable the plaintiff, with a proper equipment of men, train and cars, &c., to cut and deliver to said Camp, under said contract, 40,000 feet of logs per day during the continuance of said contract, and if the jury believe from the evidence that said Camp did use all reasonable means to furnish necessary rights of way and standing timber in quantities as aforesaid from the Gay Company, then his liability ceased on that account."

" 13. The court instructs the jury that if they believe from the evidence that monthly or periodical settlements of accounts were made between W. N. Camp and I. T. Wilson, during the continuance of the contract between them, for the purpose of shewing the standing of the accounts, and ascertaining the balance due from one to the other, and further believe that such

balance, when found due to Wilson, was paid to him by the defendant W. N. Camp, without objection on the part of Wilson to any item therein or to the balance as thus ascertained and received, and if the jury believe, from the evidence, that when said Wilson received said balance he had not notified or did not then notify said Camp of his intention to hold him responsible for damages sustained by Camp's failure to comply with the contract on his part, then they must find for the defendant."

The action of the court in refusing the instructions asked for by Camp, and giving those in lieu thereof asked for by Wilson, is assigned as error.

I am of opinion that the first instruction asked for by plaintiff in error should have been given. There is certainly no express covenant requiring Camp to secure standing timber from the " Gay Co." in sufficient quantities to enable Wilson to comply with his undertaking. Nor can I see that any such covenant is to be necessarily inferred from the language used in the contract. If, therefore, the contract is to be so construed, it must be by force of the fact that the parties themselves have placed that construction upon it. In a doubtful case, the construction placed upon a contract by the parties will be accepted by the court; and, while, in my judgment, with respect to this contract, there is no room for such an interpretation, yet it is enough for me to say that, whether or not the parties have themselves placed such a construction upon it, is a question of fact to be proved by the evidence like any other fact, and, if controverted, to be submitted to the jury upon proper instructions. If, therefore, I am correct in saying that the language of the contract does not by its terms admit of the construction placed upon it by the Circuit Court, but that, in order to reach that construction, it was necessary to adopt as a part of the contract the interpretation placed upon it by the parties themselves, then the court, instead of saying that by a " true construction " of the contract between Camp and Wilson, it became the duty of Camp to do

certain things, should have said: If from the evidence the jury are of opinion that Camp and Wilson have placed a construction upon this contract, then they are bound by it, and certain duties flowed from it. In other words, it is the duty of a court to construe a written contract, but whenever it is necessary to refer to testimony of witnesses in order to ascertain the contract, or to ascertain facts in the light of which the contract is to be construed, then the court is bound to refer such controverted matters of testimony to the decision of the jury. I am averse, under such circumstances, to read a covenant into the contract of the parties by implication as to which they have seen fit to be silent, and, in my judgment, the doctrine of implied covenants should only be resorted to where the implication is necessary in order to give a reasonable construction and operation to the language which the parties have seen fit to employ; but, as the majority of the court is of the opinion, that, by the terms of the contract, Camp was bound to provide sufficient timber to enable Wilson to cut, haul, and deliver the stipulated number of feet within the prescribed time, this assignment of error must be overruled.

Coming, then, to the thirteenth instruction given by the court, in lieu of instruction No. 2 asked for by the plaintiff in error, I am of opinion that the instruction as given is misleading and erroneous. Here were transactions between parties running through a considerable period of time, and involving a number of settlements. According to the instruction, as given, if, at the first settlement of accounts between Camp and Wilson, Wilson received the money, and notified Camp of his purpose to hold him responsible for damages, the terms of the instruction would be satisfied, although Wilson's conduct from that time henceforth was such as to indicate a waiver on his part of his purpose to hold Camp responsible, and thereby lulled him into a false security. If Wilson did not intend that Camp should rely upon these recurring settlements, he should have made Camp under-

stand that fact, and the notification given to that effect, followed by a subsequent course of dealing at variance with the purpose to hold him responsible in damages at the close of the transactions between them, may have been the means of doing him an injustice. If the monthly settlements were made by Camp and received by Wilson without protest, or explanation, or notice of a purpose upon his part to hold Camp responsible for the damages for which he now sues, then the doctrine enunciated in *American Mang. Co.* v. *Va. Mang. Co.*, 91 Va. 272, is conclusive of the case in favor of plaintiff in error. It is there stated: " If one owing a sum of money, the amount of which is not ascertained and fixed, offers his creditor a certain sum, declaring that it is in full for all that is owing him, which sum is accepted by the creditor, such acceptance is in full discharge of the demand." And, again: " If the defendant knew of any irregularity, or had ground of complaint, at the time these monthly settlements, returns, and payments were made, it was the duty of the defendant to have made known and insisted upon its objections then; but if, instead of doing so, it accepted such payment, and gave receipts in full for the amounts shown to be due by such settlements and returns, it is concluded by the original amounts as fully as if formal and final settlement of accounts had been made between the parties, and the defendant cannot now go behind such settlements and receipts in full without showing that there was fraud or mistake."

The contention, however, of Wilson is that damages for which he now sues were not embraced in any of the monthly settlements made with Camp, and that the latter fully understood that he was to be called upon to account for them upon a final settlement. It should have been left to the jury, upon the evidence, to say which version of the dealings they believed and accepted. In other words, the monthly settlements, in the absence of fraud or mistake, should have been held as final and conclusive between the parties, unless from all the evidence the

jury believed that they were made with knowledge upon Camp's part that he was to be held responsible in the final settlement between himself and Wilson for the damage claimed in Wilson's declaration.

Without passing upon the remaining assignment of error, which is to the ruling of the court in refusing to set aside the verdict as contrary to the law and the evidence, we are of opinion that the judgment of the Circuit Court should be reversed, and a new trial be awarded in accordance with the views expressed in this opinion.

RIELY, CARDWELL, and BUCHANAN, JJ., concur with KEITH, P.

HARRISON, J., dissenting:

Isaac T. Wilson and W. N. Camp entered into a written contract under seal, by which Wilson agreed to cut, haul, and deliver to Camp on the cars of certain railroads, from the timbered lands belonging to the Gay Manufacturing Company, twenty million feet of merchantable saw-mill logs; it being agreed that an average of about forty thousand feet per day, or an aggregate of about ten million feet *per annum*, was to be delivered within the period of two years.

W. N. Camp agreed to furnish Wilson with a locomotive and sufficient iron rails, switch stands and fixtures, fish plates, and spikes, and all necessary cars to carry the logs, and to pay two dollars and forty-five cents per thousand feet for all logs delivered. This suit was brought by Wilson to recover damages for the alleged failure by Camp to perform his part of the contract, whereby the plaintiff was, without default on his part, prevented from hauling all the logs, and thereby deprived of a large part of his legitimate profits.

The suit resulted in a verdict for $1,500 in favor of the plaintiff Wilson, which we are asked to set aside.

The petition for a writ of error states that " the questions to be passed upon by this court are: First, did the lower court err in refusing to give the instructions asked for; and that being disposed of in the negative, then did the court err in refusing to set aside the verdict of the jury, because same was, and is, contrary to the evidence, and is excessive? "

The instructions asked for by the defendant and refused, together with those given in lieu thereof, designated as Nos. 7 and 13, will be found in the opinion of the court, and need not appear here.

The question presented by the refusal of the court to give the first instruction is the liability of the defendant Camp to furnish Wilson with the standing timber to be cut and hauled by him.   It is true there is no express covenant in the written contract on the part of W. N. Camp to furnish to Wilson the timber to be cut, but the whole spirit of the writing imports an implied covenant that he is to provide Wilson with the standing timber of the Gay Manufacturing Company, in order that the contract between them might be carried out.   That Wilson did not own the timber, or have any control over it, appears to have been well known to Camp.   Wilson was not selling timber to Camp, but was an employee, performing the labor of cutting and hauling timber, at an agreed price per thousand feet for such work; and his agreement to cut, haul, and deliver the logs for and to Camp, and the agreement of Camp to pay him therefor import an implied covenant on the part of Camp to furnish the agreed quantities of timber for that purpose. *White* v. *Toncray,* 5 Gratt. 188.   Further, that Camp was to provide the timber to be cut and hauled is the practical construction put upon the contract as shown by the dealings of the parties, and by their evidence, not objected to.   There was no dealing, in respect to the matter, between Wilson and the Gay Company, while, on the other hand, it appears that its dealing was with Camp, who admits that he " was to furnish the timber

the Gay Company had, and that Wilson so understood it." A proper construction of the contract justified the court's rejection of the first instruction asked for by the defendant, and its substitution of that designated as No. 7, given in lieu thereof.

As contemplated by the contract, the parties settled each month the account for the logs actually cut and hauled the preceding month, Camp paying the amount shown to be due on that account, and Wilson giving a receipt therefor. The contention of the plaintiff in error is that these monthly settlements were mutual accounts stated between the parties, and that the plaintiff cannot now go behind them to assert his claim to damages for the breach of the contract by Camp. This proposition is embodied in the second instruction asked for by the defendant, the rejection of which constitutes the second assignment of error.

An account stated is an agreement between persons who have had previous transactions, fixing the amount due in respect of such transactions, with a promise either express or implied on the part of the debtor to pay the balance ascertained to be due. The minds of the parties must meet as in making other agreements, and they must both assent to the account, and the balance, as correct. An account stated is not, however, absolutely conclusive on the parties. It establishes *prima facie* the accuracy and correctness of the items, and unless this presumption is overcome by proof of fraud, mistake, or error, it becomes conclusive; but the converse of this proposition, namely, that an account stated may be impeached by fraud, mistake, or error, is very well settled. See on this subject the valuable note, and authorities there cited, by Mr. Freeman to *Lockwood* v. *Thorne* (N. Y.), 62 Am. Dec., 85; also, *Perkins* v. *Hart*, 11 Wheat 237. In the latter case, it is said, in speaking of the conclusiveness of a settled account, " If it be confined to particular items of account, it concludes nothing in relation to other items not stated in it."

In the case at bar the contract provided that all logs cut

should be measured by "Doyles log rule," and counted as by board measure, and paid for at the price named, between the 10th and 15th of each succeeding month, and in no case later than the 15th of the month. In pursuance of this understanding, an account showing the actual number of feet hauled, and the amount due therefor, was made out by a book-keeper employed by Camp, and it is not disputed or denied that these monthly accounts were paid by Camp, and correctly stated the amount due for logs actually hauled. These accounts, however, were confined to the one item of amount due under the contract for logs then cut and hauled, they made no reference to any other subject, and it is clear from the evidence that the parties never understood, at the time, that they were settling any matter between them but the amount due for logs actually cut and hauled. The settlements for logs hauled were not necessarily connected with or dependent upon an ascertainment of the damages now claimed. Indeed, it is difficult to see how damages for the failure of Camp to perform his contract, thereby causing Wilson delay and loss of time in accomplishing his work, could have been ascertained and agreed upon, and made the subject of a monthly settlement; for the delay caused by Camp one month might have been made up by his extra diligence in furnishing facilities the next.

That Camp did not himself regard the last monthly payment for logs hauled, as a final adjustment of all matters between the parties, is shown by the fact that, several months afterwards, he found on his books a balance against Wilson, antedating the last settlement for logs hauled, amounting to $60 or $70, and presented the claim to Wilson, and demanded its payment. Wilson replied: "I am not going to pay it; you owe me a lot more than that."

The evidence satisfactorily establishes that only a settlement for logs hauled was contemplated by the monthly accounts adverted to, that the parties never intended those settlements as

a final adjustment of all matters between them, and never designed that either should be thereby estopped from asserting any other demand.

Camp and Wilson, not having understood that the monthly settlements for logs hauled were final adjustments of all matters between them, the court cannot disregard the understanding of the parties themselves, and decree an adjustment between them contrary to their own understanding in the matter.

There is no conflict between this view and the principle laid down by this court in the case of *American Mang. Co.* v. *Virginia Mang. Co.*, 91 Va. 272. In that case the parties were operating under a contract for mining and shipping ore, and were to be paid every month for the number of tons of ore taken out and delivered the preceding month. It was not clear from the contract whether the ore was to be weighed as it came wet from the washer, and a royalty of $2 per ton paid on that weight, or whether it was to be weighed after it dried out, and the royalty paid on its dry weight. The ore was weighed as it came from the washer, and shipped, and it was also weighed by the railroad company when it reached its destination, and upon such railroad weights at the place of destination, the freights were paid, the royalties adjusted, and each month the account settled, and a receipt taken in full for the amount shown to be due. The defendant frequently made objection to the deductions made on the weights at the place of shipment, but continued during a period of seven years to receive the monthly statements, returns, and payments, and to give receipts in full for the balance due each month. This court very properly held that, although the method of ascertaining the weight of the ore may not have been in accordance with the contract, yet that the long acquiescence of the defendant in the method of weighing adopted, with full knowledge of all the facts, was a waiver of its right to insist upon the terms of the contract. The question involved was the right of the defendant, after acquiescing

for seven years in the method adopted for weighing the ore, to go behind such settlements and receipts in full, and insist upon recovering upon another and wholly different method of determining its weight. The long acquiescence in the method of weighing the ore, and the continued monthly settlements on that basis, constituted an implied agreement between the parties to be bound by the method of weighing pursued; and the parties were held to the agreement thus evidenced by their conduct. There could have been no settlement unless a method of weighing had been determined upon. Each monthly statement of the account depended entirely upon the weight of the ore, and could not have been made out or settled until that fact was ascertained.

In the case at bar, the only fact to be known, in order to make the monthly settlement provided for in the contract, was the number of feet of timber hauled the preceding month. Those settlements did not depend upon the amount Camp might eventually owe on account of damages for failing to fully perform his obligations under the contract.

If in the case at bar Wilson was seeking to go behind his settlements for the logs hauled, and to recover upon another, and different mode of measurement, the case cited would be directly in point, and would effectually deny his right to do so. This suit was not brought, however, for any such purpose. The settlements for the logs hauled are admitted to be correct. The suit was brought to recover damages from Camp for his breach of contract, in failing to furnish Wilson with the facilities agreed upon for cutting and hauling the logs, thereby causing him great delay, and depriving him of the ability to deliver twenty million feet within two years, as provided by the contract. Of this default on his part Camp had due notice, and was repeatedly, during the progress of the work, warned by Wilson that he would have to compensate him in damages for whatever loss he might suffer in consequence of such default;

and, in response to a threat of suit by Wilson, on one occasion, Camp said: " Wait until I get through with the Gay Company to see what they are going to do." As already seen, the right of Wilson to make this demand is not affected by his monthly settlement of the amount due for the logs he was permitted to deliver, and hence there was no error in the court's refusal to give the second instruction, nor was there any prejudice to the defendant in giving, in lieu thereof, the instruction designated as No. 13.

The third assignment of error is the court's refusal to set the verdict aside, first, because contrary to the evidence; and, second, because excessive.

In this action of the court there was no error. The evidence tended strongly to sustain the plaintiff's claim, and, upon well settled principles, the verdict cannot be set aside upon either of the grounds urged.

For those reasons I am of opinion that the judgment of the Circuit Court should be affirmed.

*Reversed.*