HARTWELL et al. v. FRIDNER et al.
(No. 483.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 29, 1919. On Rehearing, Jan. 12, 1920.)

1. PLEADING ⬥367(3)—ALLEGATIONS AS TO MAKING OF CONTRACT BY FOUR DEFENDANTS TO BE MADE MORE SPECIFIC AS TO PARTIES, TIME, AND PLACE.

In action against four defendants where petition alleged the making of a contract by defendants without specifying which of the defendants made the contract or when and where contract was entered into, and where the transactions under such contract extended over a period of months, defendants were entitled to have plaintiffs plead specifically both when and where the representations and agreements alleged were made, and to allege which of the defendants made the promises and agreements relied on.

2. CONTRACTS ⬥346(4) — INDEFINITE ALLEGATION AS TO CONTRACT MADE BY SEVERAL DEFENDANTS SUFFICIENT IN ABSENCE OF SPECIAL EXCEPTION.

In action on contract against four defendants, allegation that defendants made the contract without specifying by which of defendants it was made, and where and when it was entered into, would have been sufficient to support proof of such contract had no special exception been urged thereto.

3. CONTRACTS ⬥346(10) — VARIANCE BETWEEN CONTRACT IN EVIDENCE AND CONTRACT PLEADED MATERIAL.

In subcontractor's action against road contractor for damages sustained because of contractor's refusal to furnish gravel wherewith to perform subcontract, where petition alleged an express agreement by contractor to furnish gravel, proof of a contract whereby contractor did not either expressly or impliedly agree to furnish gravel was not admissible; such proof being a material variance from contract pleaded.

4. CONTRACTS ⬥312(1) — HIGHWAY CONTRACTOR NOT LIABLE TO SUBCONTRACTOR UPON DEFAULT BY COUNTY WHERE SUBCONTRACT IS SUBJECT TO COUNTY'S CONTRACT.

Where subcontractor's contract with road contractor was made subject to all of the conditions and limitations contained in the contract between contractor and county and where such contract did not require contractor to furnish gravel, subcontractor could not recover against contractor for damages sustained by reason of inability to complete work, where such inability was due to default of county to furnish gravel.

5. CONTRACTS ⬥166—SUBCONTRACTOR PRESUMED TO CONTRACT WORK SUBJECT TO CONTRACT BETWEEN OWNER AND CONTRACTOR.

A subcontractor is presumed to undertake his work subject to conditions and limitations in the contract between the principal contractor and the owner, if he knows these conditions and limitations; the presumption being conclusive if latter contract is made a part of the former contract.

On Rehearing.

6. CONTRACTS ⬥248 — EXISTENCE OF CONTRACTOR'S AGREEMENT TO FURNISH SUBCONTRACTOR GRAVEL JURY QUESTION.

In subcontractor's action against road contractor for damages for inability to perform contract because of failure of contractor to furnish gravel, question of whether contractor orally agreed with subcontractor to furnish and have on hand sufficient gravel wherewith subcontractor was to do work held for jury.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Action by Sam Fridner and others against Harry T. Hartwell and others. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

C. R. Wharton and Baker, Botts, Parker & Garwood, all of Houston, for appellants.

C. W. Nugent, of Galveston, Thos. B. Lewis, of Houston, and W. F. Kelley, of Post, for appellees.

BROOKE, J. The plaintiff Sam Fridner, successor of the partnership of Hawley & Fridner, filed this suit for breach of contract and damages. The gravamen of the plaintiff's case was, substantially:

That the defendants were contractors, having a contract with Wharton county to build about 60 miles of public roads, and that these defendants on the 22d day of March, 1915, sublet to Hawley & Fridner the work of unloading, hauling, and spreading the gravel, and surfacing a portion of these roads with this gravel. That under the contract between the parties hereto the defendants covenanted and agreed to furnish and have on hand at proper unloading places the gravel with which the roads were to be surfaced. That the defendants failed and refused to furnish this gravel, making it impossible for the plaintiffs to complete the work. The plaintiffs sue for various expenses incurred on account of delays in furnishing gravel and anticipated profits they would have realized upon the performance of the contract.

The defendants, after various formal pleas, exceptions and demurrers, and general de-

nial, answered, in substance: That they had a contract with Wharton county to do the road work in question, the terms of which were well known to their subcontractors, Hawley & Fridner. That under the defendants' contract with Wharton county the county was to furnish the gravel necessary for the construction of these roads. That their contract with the plaintiffs did not bind them to furnish the plaintiffs gravel. That there was a stipulation in the contract between these defendants and Wharton county which, in effect, gave the county the right to terminate the contract, if it saw fit, without responsibility for damages or for delay or failure to furnish gravel. That the plaintiffs, having accepted their subcontract with full knowledge of this clause in the defendants' contract with Wharton county, and subject to all of the provisions of the defendants' contract with Wharton county, are bound by this provision in the defendants' contract with the county, and cannot maintain a cause of action against these defendants because of Wharton county's failure to furnish the gravel.

It was averred that Wharton county had become unable to furnish the gravel because of the failure of the bank in which the county road funds were deposited.

The trial court submitted the case upon special issues, and upon the findings of the jury rendered judgment for the plaintiff for $920 expenses, and $11,750 anticipated profits which plaintiffs would have earned under the contract.

The first assignment of error presented to this court is as follows:

"The court erred in overruling defendants' special exception No. (b), which was as follows:

"'(b) The defendants further specially except to all of the allegations contained in said pleading with reference to the contract or promise or agreement or undertaking of the defendants, to pay or reimburse the plaintiff herein, which allegations are contained especially in the fifth paragraph of the plaintiff's petition, because these allegations seek to set up a new contract other than the original contract between the parties, and do not show any consideration for said new or additional contract.'"

Without going into the matter extensively, it is sufficient to say that we are of opinion that this assignment should not be sustained.

The second assignment of error is as follows:

"The court erred in overruling defendants' special exception No. (d), which was as follows:

"'(d) Further answering, the defendants specially except to the allegations in the fifth paragraph of plaintiff's petition, in which it is averred that the defendants represented and promised J. H. Hawley and Sam Fridner that they would reimburse and settle with Hawley and Fridner for losses, etc., because it is not asserted which of the defendants made such promise, representations, or agreement, and the defendants ask that the plaintiff be required to allege

when and where this representation, promise, or agreement was made, whether it was verbal or in writing, and if in writing, to attach a copy of it, and to allege which of the defendants made this promise and agreement, and with whom it was made, and where it was made, and plead fully the facts with reference thereto.'"

[1, 2] It seems there were four of the defendants: Hartwell, Bailey, Reeder, and Gilliland. The transactions had under these contracts pended over a period of months. The defendants therefore were entitled to have the plaintiffs plead specifically when and where the representations and agreements referred to in the foregoing assignment of error were made, and to allege which of the defendants made the promises and agreements relied upon. These were matters susceptible of definite allegations, and the defendants were entitled to be apprised of the facts relied upon so as to properly make their defenses. The plaintiff's petition, averring the agreement of the defendants to reimburse him for these expenses, was sufficient to have admitted the proof had no special exception been urged thereto. The defendant had the right, by timely exception, to have the pleader allege such matters in detail. This was specially desirable in the present case, where there were a number of defendants, and where the case proceeded to trial in the enforced absence of Bailey, one of these defendants, due to sickness. Considering the somewhat vague and indefinite testimony of the plaintiff Fridner as to who made this alleged agreement with him, and when and where it was made, it becomes apparent that defendants should have had this exception sustained. Suderman v. Kriger, 50 Tex. Civ. App. 29, 109 S. W. 375. This assignment of error is sustained.

The third assignment of error is as follows:

"The court erred in admitting in evidence the contract between Bailey-Reeder & Co. and Hawley and Fridner, dated the 22d day of March, 1915, over the objection of the defendants, because there was a material variance between the contract as pleaded and the contract just referred to, which the plaintiffs offered and the court admitted in evidence. The plaintiffs allege a contract under which the defendants were to furnish the gravel for the surfacing of certain roads within the time and in such quantities as would enable Hawley and Fridner to finish the contract within a specified time; they allege a contract with express covenants and undertakings on the part of the defendants to furnish this gravel, and then allege a breach of this contract in a failure on the part of the defendants to so furnish this material. The contract offered in evidence does not contain any such obligation or undertaking on the part of the defendants; it contains no express averments or undertaking or covenant that the defendants will furnish the plaintiffs the gravel for the purpose of enabling them to fulfill their contract, neither does it contain any implied undertaking or covenant to that end. It refers to the con-

tract between the defendants and Wharton county; but, after looking to all of these contracts which are in evidence and treating them as one, they contain no express obligation or undertaking on the part of the defendants to furnish this gravel, neither do they contain any implied undertaking on the part of the defendants to so furnish it; therefore, allegations that these contracts contain these provisions, and that the defendants breached the contract by failing to perform such provisions, do not show any cause of action against the defendants. Even if it should be conceded, which is not admitted but denied,. that the contract of March 22, 1915, together with the other contracts to which it refers, constitute an implied obligation on the part of the defendants to furnish the gravel for the completion of this work, yet the contract would be inadmissible because the plaintiffs do not declare upon any implied contract, or agreement, but upon an express contract, a contract containing express provisions which they allege were breached in this particular. All of these objections to the admission of this contract in evidence were urged by the defendants at the time it was offered. The court, after considering them, held that the contract of March 22, 1915, referred to the contract between Wharton county and the defendants, and looking to all these instruments together, the court found that they contained an express obligation on the part of the defendants to furnish this gravel; that therefore the contract of March 22, 1915, was admissible in evidence. This ruling is here assigned as error."

[3] We have diligently read all of these contracts many times, and have been unable to find any such stipulation therein, either express or implied. In our judgment, this exception should have been sustained, and this contract should not have been admitted, because there can be no doubt or question, as said before, not only that there is a total failure to find any such stipulations therein, but we have been unable, after diligent work and reading carefully many times all of these contracts, to find even an implied promise therein wherein the defendants should comply with such alleged stipulations with regard to the gravel. The plaintiffs having declared upon an express contract, and the contract offered in evidence containing no express provision, or in our judgment implied provision, that the defendants were to furnish the gravel with which the roads were to be surfaced, this contract should have been excluded, and the plaintiffs should not have been permitted to recover.

The allegations in plaintiffs' petition with reference to the undertaking to furnish gravel under the contract sued on are as follows:

"Plaintiffs aver that they were ready to begin the work to complete the contract, but nevertheless the defendants breached their contract and failed to furnish, or have furnished, gravel for surfacing the roads within the time and in such quantities as contracted for and contemplated and necessary to enable the plaintiffs to finish their contract within the time specified."

And again in paragraph 6 of plaintiffs' petition it is alleged:

"That by the terms of the eighth paragraph of the contract between the plaintiffs and defendants, a copy of which is attached hereto, it was and is expressly provided that work on such contract should begin within 40 days from date of said contract, to wit, the 22d day of March, 1915, and said Hawley and Fridner thereby covenanting and agreeing to have all preliminary arrangements made, and their plant, tools, equipment, industrial railway, and necessary help ready to begin work on the 1st day of May, 1915, and the defendants and each of them thereby covenanting and agreeing to have on hand by such date at proper unloading places the material, particularly the gravel, with which such roads were to be surfaced, and that on said 1st day of May, 1915, the plaintiffs had on all of the roads where the work was to be performed, all the necessary equipment ready to begin work on said contract, unloading and hauling gravel and distributing same on the roads to be surfaced under such contracts, but the defendants wrongfully breached their contract, in that they failed to furnish or have furnished to said Hawley and Fridner any gravel for surfacing until the 14th day of June, 1915, thus causing a delay of 41 working days.

"The plaintiff further alleges that by the terms of the eighth paragraph of the aforesaid contract between plaintiffs and defendants, plaintiffs obligated and bound themselves to complete the contract within 250 working days after May 1, 1915, thereby covenanted and agreed to supply themselves with all equipment, tools, etc., necessary to do the work in said time, and the defendants thereby obligated themselves to furnish or have furnished the material with which said work was to be done, particularly the gravel, with which the said roads were to be surfaced and paved according to said contract; that the plaintiffs supplied themselves with the necessary equipment to do the work in such time, and were at all times after May 1, 1915, ready and willing to handle the gravel furnished them in such quantities as to complete the contract in 250 working days, but the defendants breached their contract to furnish gravel in such quantities as contracted and contemplated that they would do, and between the 14th day of June, 1915, the day on which the gravel was first furnished on said contract, and the 23d day of October, 1915, by reason of not having gravel in such quantities, the plaintiffs' equipment was totally idle and unemployed," etc.

"That by reason of the premises as hereinbefore fully set out, the plaintiffs were, by the specific acts of said defendants, and each of them, viz., the failure to furnish gravel for surfacing the roads, and voluntarily canceling and surrendering the contract with Wharton county, precluded from doing, and denied the right and privilege to do the work contracted to be done."

The contract sued on and referred to in plaintiffs' petition is attached thereto as an exhibit and is copied in the statement of facts. When it was offered in evidence, defendants' counsel interposed objections thereto upon the ground that there was a ma-

terial variance between the contract pleaded and the one offered in evidence; that the contract pleaded averred an express obligation on the part of the defendants to furnish plaintiffs gravel with which to do the road work, and plaintiffs' pleading refers to a specific paragraph 8 of the contract said to contain that covenant and agreement; that the contract offered in evidence contained no such undertaking.

The contract is lengthy and contains many provisions which do not bear upon the exact question here presented, hence we do not copy it as part of this statement. Paragraph 8 of the contract is in the statement of facts and contains no obligation on the part of the defendants to furnish gravel. As we have said before, the contract sued on did not contain an express provision on the part of the defendants to furnish gravel. At most, nothing more than an implied undertaking could possibly arise from any construction of the contract. Upon a thorough examination of the contract, it will be found that it refers to and embodies an existing contract between the defendants and Wharton county, making that contract a part of the contract sued on. The Wharton county contract contains a stipulation that Wharton county shall furnish the gravel under certain conditions fully set forth therein. Therefore the contract sued on discloses, by an examination of its terms and a reference to the collateral contract to which it refers, not only that there was no express obligation, but no implied obligation whatever on the part of the defendants to furnish the gravel. Whitney v. Parish of Vernon, 154 S. W. 266. Many cases could be cited in support of the proposition, but the opinion of Justice Pleasants is, in our judgment, sufficient. We quote from him as follows:

"The petition of plaintiff in the former suit declared upon an express contract, and there is no rule of decision more firmly fixed than that upon a petition of this kind proof of an implied contract is not admissible."

This assignment is sustained.

The fourth assignment of error is as follows:

"The court erred in refusing the defendants' request for a peremptory instruction."

[4] The contract sued on contained no obligation on the part of the defendants to furnish gravel. By an examination of that contract and the contract between the defendants and Wharton county, to which it refers, it appears conclusively that the plaintiffs, as subcontractors, undertook this work subject to all the provisions contained in the contract between the defendants and Wharton county, and subject to all of the conditions and limitations contained in that contract. If therefore Wharton county, for any reason, failed to perform its contract, this would not con-stitute any default on the part of the defendants, and the plaintiffs would have no cause of action against the defendants for such default.

See Jones v. Gilchrist, 88 Tex. 92, 30 S. W. 442; Hussey v. Crass (Tenn. Ch. App.) 53 S. W. 896; Orman v. Ryan, 25 Colo. 383, 55 Pac. 168; Camp v. Wilson, 97 Va. 265, 33 S. E. 591; White v. Toncray, 5 Grat. (Va.) 182; Hammond v. Beeson (Mo.) 15 S. W. 1001.

Where plaintiffs enter into a contract to do the work according to specifications referred to, the provisions of the specifications become as binding upon the subcontractor as they were upon the original contractor and the company. Jones v. Gilchrist, supra.

It has also been held that where a contractor agrees with his subcontractor to pay for work done by the subcontractor on the 15th of each month, or as soon thereafter as the railroad company pays the contractor, the subcontractor cannot maintain an action for debt for the work done until he shows that the company has paid the principal contractor. He accepts the contract subject to that condition.

In the case of Camp v. Wilson, 97 Va. 265, 33 S. E. 591, it seems that Camp made a contract with Wilson by which Wilson was to cut, haul, and deliver to Camp from timber lands belonging to Gay, which lands were described in the contract, 40,000 feet of merchantable sawlogs per day for a period of two years. During the conduct of the business, Wilson complained that standing trees were not furnished, and that in other respects Camp had not complied with his contract, whereby he had been delayed, to his serious loss, because his business required a large equipment, etc., and he notified Camp that he intended to hold him responsible for the damage thus sustained. The Gay Company was not a party to the contract, nor was it shown that Camp had any contract with the Gay Company upon which Wilson relied, or that Wilson made his undertaking subject to any contract with the Gay Company. It presents a much stronger case for a covenant to furnish timber to be cut and hauled by Wilson than we find in the case at bar, requiring the defendants to furnish gravel. Discussing this timber contract, the Supreme Court of Virginia said:

"There is certainly no express covenant requiring Camp to secure standing timber from the Gay Company in sufficient quantities to enable Wilson to comply with his undertaking. Nor can I see that any such covenant is to be necessarily inferred from the language used in the contract. If therefore the contract is to be so construed, it must be by force of the fact that the parties themselves have placed that construction upon it. * * *

"I am averse, under such circumstances, to read a covenant into the contract of the parties by implication as to which they have seen fit to

be silent, and, in my judgment, the doctrine of implied covenants should only be resorted to where the implication is necessary in order to give a reasonable construction and operation to the language which the parties have seen fit to employ; but * * * the majority of the court is of the opinion that by the terms of the contract Camp was bound to provide sufficient timber to enable Wilson to cut, haul, and deliver the stipulated number of feet within the prescribed time."

Further the court says:

"It is true there is no express covenant in the written contract on the part of W. N. Camp to furnish to Wilson the timber to be cut, but the whole spirit of the writing imports an implied covenant that he is to provide Wilson with the standing timber of the Gay Manufacturing Company, in order that the contract between them might be carried out."

In Hammond v. Beason (Mo.) 15 S. W. 1001, Beason was the principal contractor to build a railroad. Hammond wrote him asking if he could have five miles of grading. Beason replied:

"By the time you can get your teams here, we will have five miles of work. You can move on to near La Crosse, Kan."

Hammond took his teams and equipment and reported to work on said section. Defendants' superintendent met Hammond's foreman and advised him that these specific sections had been allotted to him and that the work would be ready for him to commence, and on the 9th day of September notified him to be ready to move to the work the next day, which he did. He remained there waiting until the 18th, when appellee informed him that he could not get the grades from the railroad, and could give him no further promise. Suit was brought for damages incurred in waiting. The court says:

"If these facts were true, in our opinion there was a complete contract, and a breach thereof, upon which plaintiff would have a right of action, unless there was an understanding and condition that the time of the performance was dependent upon the railroad company getting the grade ready. There is no evidence of any default on the part of defendants, unless, by the unconditional terms of the contract, the default of the railroad company could be attributed to them. That, in our opinion, was a question for the jury, depending wholly upon the intention of the parties, to be gathered from all the facts and circumstances in the case. If it was understood and known to both parties, at the time of the negotiations, that the performance of the work necessarily depended upon the action of the railroad engineers in establishing the grade, then we would have to presume that the condition that the railroad company performed its part of the work would be incorporated into and become a part of the contract. This presumption would have to be rebutted by proof that the parties had no intention of making such a condition a part of the contract. As the intention of the parties is to be determined from all the evidence, it should be decided by the jury upon proper instructions."

[5] The presumption prevails that the subcontractor undertakes his work subject to conditions and limitations in the contract between the principal contractor and the owner, if he knows of these conditions and limitations. That presumption is advanced to the dignity of a positive binding fact when the contract between the subcontractor and his principal refers to and makes the contract with the owner a part thereof. This assignment of error is hereby overruled.

Inasmuch as this case must be reversed, and the errors complained of in all other assignments of error will probably not arise on another trial of this cause, we therefore, withhold comment on any other branch of the case.

For the errors above shown, this cause is reversed and remanded.

### On Rehearing.

WALKER, J. [6] There seems to be some confusion in the minds of counsel for both parties as to the effect of our opinion in this case. We intended to hold, and do now announce as our construction of the contracts sued on, that the written contract as pleaded by appellees, for the reasons stated in our original opinion, cannot be the basis of a recovery. We sustained the special exceptions to the oral contract as pleaded, and this case is reversed to give appellees the opportunity to amend their pleadings on these issues. We believe that the oral contract as to the issues discussed by us in our original opinion can be the basis of a recovery; that is, that the facts are sufficient to carry these issues to the jury.