Syllabus.

## Staunton.

## TURNER AND HAPPERSETT V. HALL AND CONNOR.

### September 16, 1920.

1. VENDOR AND PURCHASER—*Mutuality of Contract—Consideration.*— A naked agreement to sell, without a corresponding agreement to buy, is not enforceable by either party. This does not mean that a contract must always be binding on both parties. It is not lack of mutuality, but lack of consideration which renders a bilateral undertaking unenforceable against the promisor. If a valuable consideration has passed from the promisee to the promisor, the latter is bound, notwithstanding the absence of a corresponding undertaking by the former.

2. OPTIONS—*Validity—Mutuality—Consideration.* — In the ordinary case of an option for the purchase of real estate, supported by a consideration furnished by the proposed purchaser, the proposed vendor is bound, and the fact that there is no obligation to exercise the option constitutes no objection to the validity of the contract.

3. VENDOR AND PURCHASER—*Consideration—Acceptance of Offer to Sell.*—Even a naked offer to sell, without consideration, may be rendered binding on both parties by an acceptance before the offer is withdrawn. In such a case the consideration arises, as in other contracts which depend for their binding force upon mutuality of obligation, from the corresponding promise of the purchaser implied in his acceptance.

4. OPTIONS—*Minerals — Consideration — Mutuality—Presumption of Consideration from Sale—Case at Bar.*—Plaintiffs agreed, in an instrument under seal, in consideration of $8,000, to sell defendants a certain coal lease. The instrument was witnessed by the signatures and seals of plaintiffs and defendants. If this contract is to be construed as a mere option to purchase, plaintiffs were legally bound to allow defendants a reasonable time within which to accept the terms of the offer before it could be withdrawn, and yet defendants would be all the while entirely free to reject the offer without incurring any liability. There was no express promise to pay by defendants. Assuming that no such promise is implied, the contract is unilateral; but the fact that it is under seal, according to the common-

law rule still prevailing in Virginia, gives rise to a conclusive presumption of a consideration to the promisor.

5.  OPTIONS—*Duration.*—Where no time is fixed in the instrument creating an option for the duration of the option, the law implies a reasonable time.

6.  OPTIONS—*Whether Option or Contract of Sale—Case at Bar.*— In the instant case it was not very clear from the language employed whether the instrument in question was an option or an agreement to sell. The addition of very slight qualifying words in one direction would make it indisputably an option, and in the other direction would make it indisputably a contract of sale. In cases of doubt, and where there are no pertinent extrinsic facts and circumstances to the contrary, the courts prefer a construction which will result in mutuality of obligation, and they will lay hold of anything in an instrument containing an agreement to sell from which a fair inference of correlative obligation may be inferred.

7.  OPTION OR CONTRACT OF SALE—*Extrinsic Evidence.*—Where it is doubtful whether a paper constituted an agreement of sale or an option, the pertinent and explanatory circumstances, correspondence, dealings, and negotiations leading up to and surrounding the execution of the contract are properly admitted in evidence.

8.  OPTION OR CONTRACT—*Question of Law or Fact.*—Where the true meaning of the terms of a contract as to whether it is an option or an agreement of sale depends upon controverted facts and conflicting evidence, the question is one to be determined by the jury upon proper instructions from the court. It is therefore error in such a case for the trial court to instruct the jury that the court construes the contract to be an agreement of sale.

9.  PAROL EVIDENCE—*Varying Written Instruments—Whether the Contract One of Sale or An Option—Statements by the Parties During Negotiations.*—Where the question at issue was whether a contract was an option or agreement of sale, and the question is left in doubt by the language of the instrument, the conversations and negotiations which led up to the execution of the contract were properly admissible to show the mental attitude of the parties and thus explain its nature, and testimony that during the negotiations one of the parties said, "we will give you $8,000 for this lease," is not objectionable on the ground that it violated the parol evidence rule.

10. VENDOR AND PURCHASER—*Breach of Contract by Purchaser— Vendor's Measure of Damages.*—Upon breach by the vendee of an executory contract of sale, the vendor in Virginia is en-

titled to maintain his action at law for the purchase price, where he has performed, or is ready and able to perform, his part of the contract.

11. VENDOR AND ·PURCHASER—*Sale of Mineral Lease—Tender of Lease to Vendees.*—If a contract for the sale of a mineral lease was not itself a sufficient assignment of the lease, and if the failure of the vendors to make a tender of a formal transfer or conveyance would otherwise have been material, the repudiation of the contract by the vendees, and their refusal to recognize that they were in any way bound by it, excused the vendor from making the tender.

Error to a judgment of the Circuit Court of Wise county in an action of assumpsit. Judgment for plaintiffs. Defendants assign error.

*Reversed.*

The opinion states the case.

*Bond & Bruce* and *Hall, Wingfield & Apperson,* for the plaintiffs in error.

*Fulton & Vicars* and *A. N. Kilgore,* for the defendants in error.

KELLY, P., delivered the opinion of the court.

On July 5, 1918, the parties to this controversy entered into a written contract as follows:

"This agreement made this 5th day of July, 1918, between H. H. Hall and C. G. Connor, parties of the first part, and H. G. Happersett and M. W. Turner, parties of the 2nd part.

"Witnesseth, that for and in consideration of $8,000.00, $4,000.00 to be paid to parties of 1st part within thirty days from this date and balance of $4,000.00 in six months from this date with reservation to pay sooner if parties of 2nd part desire. The parties of the 1st part agree to sell

32

to parties of 2nd part a certain coal lease located in Wise county, Virginia, containing 1100 acres more or less, and lying on Bear creek in said county it being the same lease held by H. H. Hall trustee from Guest Mountain Coal and Coke Co. Witness following signatures and seals.

> "H. H. HALL       (SEAL)
> "C. G. CONNOR    (SEAL)
> "H. G. HAPPERSETT  (SEAL)
> "M. W. TURNER    (SEAL)

When the time fixed for the first payment arrived, Turner and Happersett declined to meet it, taking the position that they were not bound to buy the property except at their option. Thereupon Hall and Connor, claiming that the contract represented a straightout sale, and that they had the right to sue and recover the purchase money installments as the same fell due, brought this action of assumpsit. The jury returned a verdict and the court rendered judgment for $4,000 with interest from August 5, 1918, being the exact amount which was due for the first installment if Turner and Happersett were bound by the contract. To that judgment this writ of error was awarded.

The questions involved, both as to the law and the facts, may be sufficiently discussed and disposed of by taking up, without further preliminary statement, the more important assignments of error.

1. It is insisted that no action could be maintained by either party upon the paper of July 5, 1918, because it was a mere offer to sell without any agreement to buy, and was, therefore, void for lack of mutuality. This question was raised below by demurrer to the declaration, by objection to the introduction of the paper in evidence, and by instructions given and refused.

[1, 2] It is undoubtedly a sound and settled principle that

a naked agreement to sell without a corresponding agreement to buy is not enforceable by either party. (*American Agricultural Co.* v. *Kennedy,* 103 Va. 171, 176, 48 S. E. 868.) This does not mean that a contract must always be binding on both parties. It is not lack of mutuality, but lack of consideration which renders a bilateral undertaking unenforceable against the promisor. If a valuable consideration has passed from the promisee to the promisor, the latter is bound, notwithstanding the absence of a corresponding undertaking by the former. In the ordinary case of an option for the purchase of real estate supported by a consideration furnished by the proposed purchaser, the proposed vendor is bound, and the fact that there is no obligation to exercise the option constitutes no objection to the validity of the contract. The doctrine is well stated in 6 R. C. L., p. 686, section 93, as follows: "Consideration is essential; mutuality of obligation is not, unless the want of mutuality would leave one party without a valid or available consideration for his promise. The doctrine of mutuality of obligation appears, therefore, to be merely one aspect of the rule that mutual promises constitute considerations for each other. Where there is no other consideration for a contract, the mutual promises must be binding on both parties, but where there is any other consideration for the contract, mutuality of obligation is not essential."

[3] Even a naked offer to sell, without consideration, may be rendered binding on both parties by an acceptance before the offer is withdrawn. In such a case the consideration arises, as in other contracts which depend for their binding force upon mutuality of obligation, from the corresponding promise of the purchaser implied in his acceptance. *Carter* v. *Hook,* 116 Va. 812, 818, 83 S. E. 386, and authorities cited; *Cummins* v. *Beavers,* 103 Va. 230, 237, 48 S. E. 891, 106 Am. St. Rep. 881, 1 Ann. Cas. 986.

[4, 5] Applying this familiar and settled principle to the

contract under consideration, we have a case in which, if the contract be construed as a mere option to purchase, Hall and Connor were legally bound to allow Turner and Happersett a reasonable time within which to accept the terms of the offer before it could be withdrawn, and yet Turner and Happersett would be all the while entirely free to reject the offer without incurring any liability. There is no express promise to pay. Assuming that no such promise is implied, the contract is unilateral, but the fact that it is under seal, according to the common law rule still prevailing in Virginia, gives rise to a conclusive presumption of a consideration to the promisor. 3 Min. Inst. 139; *Watkins* v. *Robertson,* 105 Va. 269, 279, 54 S. E. 33, 5 L. R. A. (N. S.) 1194, 115 Am. St. Rep. 880 (applying the rule to an option under seal). There being no time fixed in the instrument for the duration of the option, if it was an option, the law would imply a reasonable time. (39 Cyc. 1241, 1243; *Hanly* v. *Watterson,* 39 W. Va. 214, 221, 19 S. E. 536.)

[6] But is the paper of July 5, 1918, an option, or is it an agreement of sale? It cannot be said that the language very clearly or very aptly imports that it is either the one or the other. It is so much like both that the addition of very slight qualifying words in one direction would make it indisputably an option, and in the other direction would make it indisputably a contract of sale. In cases of doubt, and where there are no pertinent extrinsic facts and circumstances to the contrary, the courts prefer a construction which will result in mutuality of obligation, and they will lay hold of anything in an instrument containing an agreement to sell from which a fair inference of correlative obligation may be inferred. 1 Page on Contracts, section 305; 13 C. J. 334. If we had to deal only with the face of the contract, that rule could properly be applied in this case. While there is certainly no express promise to buy the land, the failure to fix any time for the acceptance of the offer,

the specification of fixed maturity dates for the purchase price without regard to any date for acceptance of the offer, and possibly other features of the instrument, afford plausible ground for arguing that both parties looked upon the transaction as an agreement of sale.

[7] But it must be conceded that the construction of the paper is not free from doubt. It was prepared by the parties themselves, and is loosely and inartificially drawn. The court properly admitted in evidence the pertinent and explanatory circumstances, correspondence, dealings and negotiations leading up to and surrounding the execution of the contract. These had a most important bearing upon the meaning and intention of the parties as attempted to be expressed by them in writing. We need not recite these extrinsic facts and circumstances. It is sufficient to say that they are so significant and important that they have been earnestly urged upon us by both sides in support of the respective contentions of the parties as to the true construction of the contract. The evidence in respect thereto was conflicting in material particulars.

[8] The case, therefore, assumes this aspect: The effect of the contract depends upon the intention of the parties. Their intention is not clear from their language and there is extraneous evidence, much of it conflicting, which must be resorted to, and in the last analysis relied upon, in explaining the meaning of the contract. This being true, the question should have been referred to the jury, and the court erred in giving Instruction No. 1 for the plaintiffs, which was as follows:

"The court construes the contract of July 5, 1918, read in evidence, as meaning that the defendants agreed and bound themselves to pay the plaintiffs $4,000.00 thirty days after the date thereof, and the like sum six months after the date thereof, for the consideration in the said writing specified, and the jury, in arriving at their verdict, shall be governed accordingly."

Where the true meaning of the terms of a contract depend upon controverted facts and conflicting evidence, the question is one to be determined by the jury upon proper instructions from the court. *Camp* v. *Wilson,* 97 Va. 265, 270, 33 S. E. 591; *Strause* v. *Richmond,* 109 Va. 724, 729-730, 65 S. E. 659, 132 Am. St. Rep. 937; *Walker* v. *Gateway Milling Co.,* 121 Va. 217, 227, 92 S. E. 826; 24 Am. & Eng. Ency. L. (2d ed.) 1039.

In *Camp* v. *Wilson, supra,* this court said: "It is the duty of a court to construe a written contract, but whenever it is necessary to refer to testimony of witnesses in order to ascertain the contract, or to ascertain facts in the light of which the contract is to be construed, then the court is bound to refer such controverted matter of testimony to the decision of the jury."

Before leaving this branch of the case we may add that the decisions of this court in *Smokeless Fuel Co.* v. *Seaton,* 105 Va. 170, 52 S. E. 829, and *Hairston* v. *Hill,* 118 Va. 339, 87 S. E. 573, which are strongly relied upon by the defendants in error for the proposition that the contract in this case upon its face appears to be a contract of sale, do not seem to us to sustain the proposition. In the former case the language of the contract in terms expressed a sale and not an agreement to sell, and contained other features not appearing in the present contract, upon all of which the court, without having to resort to extrinsic evidence, construed the agreement to be mutually binding upon the parties. In the latter case, *Hairston* v. *Hill,* there was an express provision for the sale or lease of the minerals, on one side, and payment therefor on the other. Moreover, that was a suit in equity in which all questions of law and fact were necessarily referred to the court, and the opinion shows that the construction adopted was, at least to some extent, influenced by extraneous evidence showing the practical construction which the parties themselves had placed upon the contract.

The conclusion reached under the first assignment of error will result in a reversal of the cause, but it is proper that we should pass upon the other assignments, because the same questions may arise at the next trial.

[9] The defendant, Connor, was permitted, over the objection of the plaintiffs, to testify in substance that shortly before the contract of July 5, 1918, was written and signed, and during the negotiations leading up to it, Turner, in the presence of Happersett, said: "We had as well get down to brass tacks. Myself and Happersett, will give you $8,000.00 for this lease," and that Connor and Hall talked the matter over and stated that they would let them have it.

This testimony is objected to on the ground that it violates the rule against varying the terms of a written instrument by oral testimony. We do not think the objection is good. The testimony in question was introduced to throw light upon the intention of the parties. The evidence does not tend to vary or alter the agreement as to its terms, but merely tends to explain its uncertainty and ambiguity. In other words, the question here is, was the contract an option or was it a sale? This question is left in doubt by the language of the paper. The conversations and negotiations which led up to the execution of the contract were properly admissible to show the mental attitude of the parties and thus explain its nature. *Walker* v. *Gateway Milling Co., supra* (121 Va. 217, 226, 92 S. E. 826.)

[10] Assignment of error No. 3 raises the question as to what was the proper measure of damage, if the plaintiffs were entitled to recover. They sued for the whole of the first installment of purchase money, the second installment not then being due, and the court permitted a recovery for that amount. Counsel for plaintiffs in error state their position upon this question as follows: "The measure of damages in such cases is the difference between the contract price and the market value at the time fixed for the

performance of the contract. In a few jurisdictions, the vendor is entitled to maintain an action on an executory contract of sale for the purchase money, on the theory that the action is in the nature of a suit in equity for specific performance. The great weight of authority, however, is to the effect that in an action at law, the vendor can only recover damages for the breach of an executory contract of sale, and if he desires to recover the purchase money as such, he must go into equity and sue for specific performance of the contract."

The position thus taken by counsel is very generally supported by the authorities. 2 Sutherland on Damages (3d ed.), section 568, 569 and 570; 29 Am. & Eng. Ency. L. (2d ed.) 719.

Virginia, however, seems to have adopted the minority rule. 2 Lomax Dig. (2d ed.) 60; *Bailey* v. *Clay*, 4 Rand. (25 Va.) 346; 2 Min. Inst. (4th ed.) 864. Mr. Minor states the rule as follows: "The proper measure of damages to be recovered by the vendor is for the most part the stipulated price of the property sold; for in general he cannot recover at all unless he shows himself to have performed or to be ready and able to perform on his side, which usually supposes the vendee to be without excuse for his default, and entitles the vendor to be paid the purchase money."

The evidence shows that the defendant in error held a valid contract in writing from the Guest Mountain Coal and Coke Company, providing for a formal coal lease; that this contract was the subject of the option or sale evidenced by the writing of July 5, 1918, and was described therein as "a certain coal lease * * * held by H. H. Hall, trustee, from Guest Mountain Coal and Coke Company," and contained data sufficient in itself to render certain and definite the terms of the proposed formal lease; that the Guest Mountain Coal and Coke Company was able and anxious to execute the formal lease to the plaintiffs in error; and that

in refusing to take the property they never at any time before this action was brought relied upon or suggested as a reason for such refusal, the failure of defendants in error to make a tender of the formal lease. These facts bring the case within the rule as laid down by Mr. Minor for the measure of damage.

[11] It is further insisted that the court erred in holding that the plaintiffs below were not required to actually tender to the defendants the contract of lease which was the subject of the contract sued on. In addition to what has just been said on this subject, we may add that while the plaintiffs had not in fact made any formal tendor to the defendants of their contract with the Guest Mountain Coal and Coke Company, and had not procured any formal lease from that company, they were anxious and able to do so, and the defendants, who knew these facts, were relying simply and solely upon their claim that the contract of July 5, 1918, was an option.

If the contract itself, when construed as a contract of sale, was not a sufficient assignment of the lease, and if the failure to make a tender of a formal transfer or conveyance would otherwise have been material, the repudiation of the contract by Happersett and Turner, and their refusal to recognize that they were in any way bound by it, excused Hall and Connor from making the tender. *Barnes* v. *Morrison*, 97 Va. 372, 34 S. E. 93.

The remaining assignments of error are of minor importance, but have been fully considered, and are deemed without merit.

For reasons stated in connection with the first assignment of error, the judgment will be reversed, the verdict of the jury set aside, and the cause remanded for a new trial to be had in conformity with the views herein expressed.

*Reversed.*